Warder v. Henry.

## WARDER v. HENRY, *Appellant.*

### Division One, November 6, 1893.

1. **Deed:** ACKNOWLEDGMENT: STATUTE. A certificate of acknowledgment to a deed is sufficient, if it substantially complies with the requirements of the statute.

2. ——: ——: ——. Where such certificate recites that the person acknowledging the deed "personally appeared" before the officer taking it, it substantially complies with the provision of the statute requiring the certificate to state that such person is "personally known" to such officer.

3. **Practice:** ANSWER: PENDENCY OF FORMER SUIT. Where an answer sets up as a defense the pendency of a former suit between the same parties, founded on the same cause of action, the plaintiff may dismiss the first one and proceed with the second one, and such dismissal may even be set up in an amended reply.

4. ——: ——: ——. *Semble,* that where the remedies are concurrent, the pendency of the first suit is no objection to the prosecution of the second one.

5. **Supreme Court Practice:** REMITTITUR. A respondent will be permitted to enter a *remittitur* in the supreme court to cure an error in the amount of his verdict.

6. ——: ——: SURETIES ON APPEAL BOND. Nor will the sureties on the appeal bond be permitted to successfully interpose their objection to such *remittitur* on the ground that the appellant is insolvent, and refuses to indemnify on the appeal bond as he had agreed to do.

7. **Landlord and Tenant:** WASTE. An implied obligation exists arising out of the relation of landlord and tenant, that the tenant will use reasonable care to prevent injury to the inheritance; and to carelessly permit stock to go into the orchard on the leased premises and to destroy fruit trees, is a want of reasonable care.

8. ——: ——: DEFINITION OF "CARELESSLY:" INSTRUCTIONS. The court, in an action by the landlord against the tenant for such injury, may instruct the jury that, if defendant carelessly and knowingly permitted his stock to injure plaintiff's trees, he is 'liable therefor, without defining the word "carelessly" to the jury.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

AFFIRMED.

*Jefferson Brumback* for appellant.

(1) The deed of trust of March 10, 1888, was not well acknowledged, and the record thereof was not constructive notice to Crawford when latter took his leases; Laws, 1883, p. 20; *Huse v. Haines,* 104 Mo. 103; 1 Revised Statutes, 1879, secs. 681, 743, 672; *Hughes v. Morris,* 19 S. W. Rep. 481; *Owen v. Baker,* 101 Mo. 407; *Agan v. Shannon,* 103 Mo. 661; *Hughes v. McDivitt,* 102 Mo. 77; *Wilson v. Quigley,* 107 Mo. 100; 1 American and English Encyclopedia of Law, p. 154; *Salmon v. Huff,* 15 S. W. Rep. 1047. The circuit court erred in refusing instructions 8 to 14 asked by Henry. (2) The Crawford lease and possession thereunder, without actual or constructive notice of the deed of trust of March 10, 1888, was a breach of the covenants in the warranty deed of January 10, 1890, to Henry, and constituted an element of defense to the $10,000 demand sued on in first count of Warder's petition. *Blondeau v. Sheridan,* 81 Mo. 545; Rawle on Covenants for Title [5 Ed.], sec. 138, p. 181, and cases cited; *Kellsgg v. Malin,* 50 Mo. 503; *Williamson v. Hale,* 62 Mo. 406; *Clore v. Graham,* 64 Mo. 249, 255; Rawle on Covenants

for Title [5 Ed.], secs. 88, 89, 291; *King v. Kilbride,* 58 Conn. 109; *McLeod v. Skiles,* 81 Mo. 604. The circuit court erred in refusing instructions 7 to 13 asked by Henry, and giving instructions 1 and 2 asked by Warder. (3) The second defense of Henry's answer to first count of petition of another suit on same cause of action in this state was good; 1 Revised Statutes, 1889, secs. 2043, 2047; *Smith v. Lathrop,* 84 Am. Dec. 452, and notes; 6 Wait's Actions and Defenses, p. 397, and following; Laws, 1849, p. 80, secs. 3, 6; 2 Revised Statutes, 1855, p. 231, sec. 6; Endlich on Interpretation of Statutes [1 Ed.], secs. 200, 201, 202, 204, and cases cited; *State v. Boogher,* 71 Mo. 631; *Lee v. Hefley,* 21 Ind. 99; *Commonwealth v. Churchill,* 5 Mass. 174; *Parker v. Colcord,* 2 N. H. 36; *Hope v. Alley,* 11 Tex. 259; *Gamsley v. Ray,* 52 N. H. 513; *Bond v. White,* 24 Kan. 45; *Beyersdorf v. Sump,* 4 N. W. Rep. 101; *Witter v. Neeves,* 47 N. W. Rep. 938; *Halloway v. Halloway,* 103 Mo. 283; *State v. Dougherty,* 45 Mo. 293, 297; *Downer v. Garland,* 21 Vt. 362. (4) The circuit court erred in its action respecting the demand of $1,775 of Warder, sued on in second count of petition, *pro rata* value of insurance policies assigned to Henry by Warder Grand Opera House Company. (5) The circuit court erred in giving instruction 4 for Warder as to injury to orchard. *Gurley v. Railroad,* 93 Mo. 451; *Wiser v. Chesley,* 53 Mo. 549; *Mueller v. Putnam,* 45 Mo. 84; 3 Sutherland on Damages [1 Ed.], p. 303, and cases cited.

*Elijah Robinson* for respondent.

(1) The deed of trust of March 10, 1888, was properly acknowledged and the record thereof was notice to Crawford when he took his lease. "It was not necessary that the certificate should state that the

grantor was personally known to the officer, but it is sufficient if the certificate shows that the grantor was known to him." *Alexander v. Merry*, 9 Mo. 514; *Robson v. Thomas*, 55 Mo. 581. "It is not necessary that a certificate should follow the language of the statute. It is sufficient that there is a substantial compliance with the law." *Hughes v. McDivitt*, 102 Mo. 83. (2) The warranty deed made by the opera house company to Henry, and the contract of January 10, 1890, were parts of the same transaction and are to be construed together. *Hach v. Hill*, 106 Mo. 18; *Brownlee v. Arnold*, 60 Mo. 79; *Lewis v. Ins. Co.*, 3 Mo. App. 372. (3) When the intention of the parties can be ascertained from the instruments, it will always control, although apparently in conflict with technical provisions. "Greater regard is to be had to the intention of the parties than to any particular words which they may have used in the expression of their intent." *Ford v. Beech*, 11 Q. B. 867. "The intention of the parties is the polar star in construing written instruments." *Bradley v. Packet Co.*, 13 Pet. 89; *Mauran v. Bullus*, 16 Pet. 528. "In the interpretation of written contracts the rule most conspicious and wide-reaching, is that the contract should be so construed as, if possible, to carry out what the contracting parties meant." *Belch v. Miller*, 32 Mo. App. 386; *County v. Wood*, 84 Mo. 509. (4) The trial court committed no error in holding that the former suit, if dismissed before the trial of this case, constituted no defense to this action. (5) The court did not err in permitting the defendant to enter his remittitur. This was an independent branch of the case, entirely distinct and separate from other questions involved, and inasmuch as there was a separate finding on this question, there is no reason why the plaintiff should not have been permitted the amount thus found in his favor. *Loyd v. Railroad,*

53 Mo. 509; Sedgwick on Damages [6 Ed.], 765; *Belknap v. Railroad*, 49 N. H. 358; *McIntyre v. Railroad*, 37 N. Y. 278; *Railroad v. Herbert*, 116 U. S. 644; *Rolling Mills Co. v. Gillham*, 100 Ill. 55. (6) Again, the defendant may move an additional remittitur in this court. *Hahn v. Sweazea*, 29 Mo. 199; *Tilford v. Ramsey*, 43 Mo. 320; *Loyd v. Railroad*, 53 Mo. 514; *Cook v. Railroad*, 63 Mo. 397; *Johnson v. Morrow*, 60 Mo. 340; *Miller v. Hardin*, 64 Mo. 545; *Keene v. Schnedler*, 92 Mo. 527; *Kinsey v. Wallace*, 36 Cal. 462.

BLACK, P. J.—The petition in this case sets up three separate and distinct causes of action. The first is based upon a writing, dated twentieth of January, 1890, whereby defendant Henry agreed to pay to the plaintiff, Warder, on or before six months after date, the sum of $10,000, to be paid in bonds of a description fully set forth, or, at the option of Henry, in cash.

In the second, the plaintiff states that defendant is indebted to him in the sum of $1,775, on account of the *pro rata* unexpired premiums on certain fire insurance policies held by the Warder Grand Opera House Company on its property, of which property Henry became the purchaser, and which policies were duly assigned to said Henry. The plaintiff admits that he owes defendant $351.65 on account of certain other unexpired policies turned over by defendant to him. Other items were set out in this cause of action, but as they are not in dispute in this court they need not be mentioned.

It is alleged in the third cause of action that defendant, while in possession of a certain farm as the lessee of the plaintiff, unlawfully permitted cattle to break down, injure and destroy fruit and ornamental trees on the farm, to the damage of the plaintiff in the sum of $1,600.

To an understanding of this case and the various defenses set up to the several causes of action, it. is necessary to go back to the beginning of the transactions which give rise to this contest. The Warder Grand Opera House Company, a corporation, hereafter called the opera house company, owned certain property in the City of Kansas, known as the Warder Grand Opera House and the Hotel Warder. On the tenth of March, 1888, the corporation executed a deed of trust upon the before mentioned property to secure a debt of $85,000. This deed of trust was recorded the same day, though there is a claim made in this suit that it was not entitled to record because not properly acknowledged. Thereafter, and in the month of November, 1888, the opera house company leased that part of the property, known as the Warder Grand opera house, to one Crawford for a period of five years.

On the tenth of January, 1890, the opera house company, by its president and the defendant, Henry, made a lengthly written contract, whereby the company sold all of the first mentioned property to Henry, for the consideration of $350,000, to be paid as follows: *First.* To the National Bank of Commerce the sum of $150,000, on account of the said secured debt of $85,000, and of certain mechanic's liens, all then held by said bank; *second*, to convey to the opera house company, or to any person it might designate a farm of 500 acres in the state of Illinois, known as the Rossland Park farm, subject, however, to ja mortgage thereon, of $50,000; *third*, to deliver to the opera house company or to its order, $40,000 worth of cattle then on the farm; *fourth*, a note payable to the opera house company, or its order, for $15,000; and *fifth*, "Said Henry shall also, within six months from time of conveyance to him, deliver to said opera house company, or to anyone it may designate, bonds to the

amount of ten thousand dollars ($10,000) in the aggregate out of bonds aggregating $200,000, all of which shall be first mortgage bonds on the property particularly described in paragraph one of this contract, or may in lieu of said bonds pay said opera house company, or to its order, ten thousand dollars cash, and shall pay such cash if the bonds be not delivered within said six months."

The agreement recites the fact that the property was then being advertised for sale under the $85,000 deed of trust, and that Crawford held the above-mentioned lease. The opera house company reserved the right to procure a cancellation of the Crawford lease, if it could do so; and in that event it agreed to convey the property to Henry by a warranty deed. It was further agreed that if the company could not procure a cancellation of the lease held by Crawford, then the property was to be sold under the deed of trust, and purchased by Henry at not less than $350,000, to be paid as before mentioned. The contract contains the further stipulation that, if Henry should take title under the trust deed, the said opera house company shall also make to him a warranty deed of the property." The contract contains other stipulations which need not be noticed.

The above contract was duly ratified by the board of directors of the opera house company, and at the same time the board ordered Henry to execute to Warder, who was president of the company, the $15,000 note to be by him discounted for the purpose of paying off liens over and above the $150,000, to be paid by Henry. The board also found that the company was indebted to Warder to an amount exceeding $78,000, and at the same time made an order directing Henry to turn over the cattle and to convey the farm to Warder, and to deliver Warder the $10,000 in bonds,

or the cash, which Henry had the right to pay in lieu of the bonds.

The opera house company was unable to procure a cancellation of the Crawford lease, and the property was sold, under the $85,000 deed of trust, to Henry at the price of $350,000, and he received a trustee's deed dated the twentieth of January, 1890.   On the same day, the opera house company executed a deed conveying to Henry the opera house and hotel property, being the same property conveyed to Henry by the trustee's deed.   This deed professes on its face to be made in consideration of $1 and other valuable considerations. It sets forth by way of recital the trustee's deed of the same date, and it is then stated that it is made to ratify and confirm the trustee's sale.   The deed also contains full covenants of warranty and against incumbrances, making no exceptions, save as to some unpaid taxes.

On the same day, the twentieth of January, 1890, Henry executed a deed conveying the farm to Warder. At the same time, and in compliance with the previous contract and the order of the board of directors, he gave Warder a writing thereby acknowledging that he owed Warder $10,000, due in six months, to be paid in the described bonds, or, at the option of Henry, in cash.   This writing is the basis of the plaintiff's first cause of action.

Crawford refused to deliver possession of the opera house to Henry, and thereupon the latter brought suit against Crawford in ejectment.   That suit was decided by the trial court in favor of Crawford, on the ground that he had no actual notice of the deed of trust at the time he took the lease, and because the deed of trust was not well acknowledged, and therefore the record of it did not charge Crawford with constructive notice.

Henry did not call upon or notify the opera house company or Warder to defend that suit.

As a defense, Henry sets up the opera house company deed to him, the Crawford lease, and claims that the lease constitutes a breach of the covenant in that deed, and that the damages should be set off against the plaintiff's first cause of action. He also pleads a former suit pending, the facts of which will be noted hereafter. The trial court directed a verdict for plaintiff on the first cause of action.

1. The first question is whether the deed of trust, of date March 10, 1888, made to secure the $85,000 debt, was well acknowledged, so that the record thereof charged Crawford with notice, when he at a subsequent date accepted the five-year lease.

The certificate of acknowledgment, omitting the caption and attestation of the notary, is in these words:

"On this first day of March, 1888, before me personally appeared George W. Warder, who being by me duly sworn, did say that he is the president of the Warder Grand Opera House Company, a corporation duly organized under the laws of the state of Missouri, and that the seal affixed to the within and foregoing instrument is the corporate seal of said corporation, and that said instrument was signed and sealed in behalf of said corporation by authority of its board of directors; and said George W. Warder acknowledged said instrument to be the free act and deed of said corporation."

The notary public in making this certificate undertook to follow the form given in the third section of the act of April 2, 1883, which form begins with these words: "On this —— day of —— 18—, before me appeared A. B., to me personally known, who, being by me duly sworn," etc. The point of the objection

is, that the acknowledgment omits the words "to me personally known" after the words "George W. Warder" where they first appear in the acknowledgment. Now, take the statute and it will be seen the officer should certify that "before me appeared George W. Warder, to me *personally known.*" The certificate states, "before me *personally appeared,*" etc. The officer in making this statement that George W. Warder personally appeared before him, includes therein the proposition that Warder was to him personally known; for, unless personally known, how could he say Warder *personally appeared?* The meaning and sense of the certificate of acknowledgment is the same as the statute. The transposition of words does not affect the validity of the certificate. There is certainly here a substantial compliance with the statute, and that is all the law demands, as has been time and again held by this court. *Alexander v. Merry,* 9 Mo. 514; *Robson v. Thomas,* 55 Mo. 581; *Hughes v. McDivitt,* 102 Mo. 77; *Wilson v. Quigley,* 107 Mo. 98.

As the deed of trust was well and properly acknowledged, Crawford had constructive notice of it; and the foreclosure of the deed of trust by the trustee's sale to Henry cut out the lease. By the trustee's deed, Henry took a title superior to the lease. If we lay aside the trustee's deed and look alone to the deed executed by the opera house company, then the Crawford lease constituted a breach of the covenants in that deed set forth, for the covenants are general. But that deed recites the existence of the trustee's deed to the same grantee, and the two deeds are parts of one and the same transaction and are to be construed together. General covenants in a deed may be restrained by a contemporaneous sealed instrument. Rawle on Covenants for Title [5 Ed.], sec. 295.

But it is not essential to pursue this inquiry; for we understand it to be conceded that if the deed of trust was properly acknowledged, then there was no breach of the covenants in the opera house deed. There being no breach of the covenants in that deed, Henry sustained no damage which he could set up as against the opera house company, and this being so, he sustained no damage which he can set up against Warder.

2. The next contention of the defendant is that his answer of a former suit pending between the same parties for the same cause of action, set up to the plaintiff's first cause of action, should have prevailed. The facts as declared by the pleadings and evidence are these:

On the fourth of September, 1890, Warder commenced a suit in the Jackson county circuit court against Henry and against the Kansas City Auditorium Company, The Illinois Trust and Savings Bank, and the National Bank of Commerce, based upon the same agreement set up in the first cause of action in this case. That was a suit in equity, in which Warder prayed for judgment against Henry for $10,000, and that the same be enforced as an equitable lien upon the opera house and hotel property. Henry was served with process in that suit before the commencement of this one. This suit was commenced on the sixteenth of September, 1890, and Henry filed answer, setting up as a second and further defense the pendency of the former suit. To this second defense Warder filed a reply on the thirteenth of November, 1890, stating therein that the former suit had been dismissed, and also denying some of the allegations made in the answer. To this reply Henry demurred. The former suit had not been dismissed as to Henry when the reply was filed, but it was dismissed as to him on the twenty-fourth of December, 1890. On the second of January, 1891, Warder, with

leave of the court, withdrew his reply, and at the same time refiled it. The demurrer had not yet been determined. To this action of the court Henry excepted. He at the same time refiled his demurrer to the refiled reply, which demurrer the court overruled on the second of January, 1891, and on that day a jury was empaneled to try the cause.

Our code of civil procedure provides that the defendant may demur to the petition when it shall appear upon the face thereof that "there is another action pending between the same parties for the same cause in this state;" and, if that objection does not appear upon the face of the petition, it may be raised by answer. Counsel for defendant insist that the statute must be strictly construed; that, if the answer was true when made, the defense is good, and the plaintiff cannot avoid its effect by a dismissal of the former suit, but must go out of court.

We do not agree to these propositions. Though under our code a former suit pending is a matter of defense and must be pleaded with matter going to the merits of the action, still such defense is matter in abatement of the suit. The ground on which courts proceed in the abatement of subsequent suits is that they are unnecessary, and are therefore deemed vexatious and oppressive. Such is the language of this court in *State ex rel. v. Dougherty*, 45 Mo. 294; and this observation was approved in *Jacobs v. Lewis*, 47 Mo. 344. It is true no mention was there made of this statute, but it does not follow that the court did not have the statute in mind. These decisions of this court show that this statute is not an iron rule. Like many other provisions of the code, it is but declaratory of the common law; and in its application regard should be had to the substantial rights of the parties. Says Judge BLISS: "It is sufficient if the other action pleaded was pending at

the commencement of the suit, but the plaintiff may dismiss his action in one court and he is thereby enabled to retain it in the other," citing *Rush v. Frost*, 49 Iowa 183, which supports the text.    Bliss on Code Pleadings, [2 Ed.], sec. 410.    There is, no doubt, a conflict in the authorities upon this subject, but we hold that where the answer sets up the defense of a former suit pending between the same parties founded upon the same cause of action, the plaintiff may dismiss the former suit and proceed with the second one.    He may even set up the dismissal by an amended reply, filed with leave of court, as was done in this case.    We believe this conclusion to be in perfect accord with the spirit of our code of civil procedure.

As the first suit was one in equity to enforce an equitable lien, and the second an action at law against Henry alone, there is ground for saying that the remedies are concurrent, and the pending of the first is no objection to the prosecution of the second; but, as this question is not discussed in the briefs, we pass it without expressing any opinion thereon.

3.  As to the second cause of action.  On the twentieth of January, 1890, when Henry received the deed for the opera house property and Warder received the deed for the farm, Warder, as president of the opera house company, assigned and transferred to Henry unexpired policies of insurance on the opera house property.  At the same time Henry agreed to, and thereafter did, assign to Warder certain other policies on the buildings on the farm.    Warder avers that Henry agreed to pay him the difference.    This Henry denies, and avers that the opera house policies belonged to the opera house company and not to Warder.

The defendant asked two instructions to the effect that Warder could not recover on account of the opera

house policies, because the opera house company, and not Warder, was entitled to what was due on account of them, both of which instructions were refused. At the request of the plaintiff the court directed the jury to find for the plaintiff the value of the opera house policies, if there was an agreement between the opera house company and Warder to the effect that all the unsold property of the company should become the property of Warder to reimburse him for the expenditures made by him.

The jury allowed Warder the sum of $1,751.13 for the policies and also an undisputed item of $83.33, and allowed the defendant for policies turned over to Warder the sum of $557.72, and found a balance in favor of Warder of $1,276.74.

When the motion for new trial came on for hearing, the court expressed the opinion that the evidence failed to show that the opera house policies were the property of Warder. Thereupon the plaintiff remitted $1,276.74, and the motion for a new trial was overruled. It is now objected by Henry that the court erred in giving the plaintiff's instruction, in refusing his instructions, and in accepting the remittitur of only $1,276.74, when the plaintiff should have remitted $1,751.13.

It is manifest from what has been said that if the plaintiff was bound to remit anything he was bound to remit $1,751.13, the whole amount allowed Warder for the opera house policies. The trial court, in effect, held, and ruled, on the motion for new trial, that it had erred in giving the instruction asked by plaintiff. The plaintiff accepted this ruling as correct, and undertook to avoid a new trial by entering a remittitur, but failed to remit enough. He ought to have remitted the full amount and, no doubt, intended to do so. He will be

allowed to remit the further sum of $474.33 in this court.

4. We now come to the plaintiff's third cause of action. It appears Warder leased to Henry the Illinois farm. The evidence produced by Warder tends to show that there was an orchard on the farm; that a large number of trees therein had been barked and otherwise injured by stock owned and under the care and keeping of Henry, while the farm was in his possession as lessee of Warder; that Henry's employees suffered and allowed the stock to run in the orchard; and that the orchard was thereby damaged to the amount of $1,600 or over.

Henry, testifying in his own behalf, stated that there was an old orchard on the farm; that he placed little or no value on the trees, because they bore little or no fruit; that the orchard was in an enclosure of about seventeen acrees close to the barn; that the orchard had always been used as a pasture; that there was a young orchard on the farm at another place, the trees in which had not been injured; and that he pastured and used the old orchard the same after as before the sale of the farm to Warder.

On this evidence the court, at the request of the plaintiff, gave the following instruction:

"4. The court instructs the jury that, if the defendant had possession of the Rossland Park farm as tenant of plaintiff, from January 20, 1890, until the first day of April, 1890, and if they further believe from the testimony that, during said period, he or his employees, in charge of said farm, carelessly or knowingly permitted cattle or other stock to go into the orchard and destroy or injure the fruit and ornamental trees therein, then the jury will allow plaintiff on the third count of his petition whatever amount of damages plaintiff sustained

by such injury to said trees not to exceed the sum of $1,600.''

The defendant asked no instruction bearing upon this cause of action. The jury allowed Warder $500 damages. The first objection to this instruction is that the word ''carelessly'' is not defined or explained. This court has on several occasions held that the expression ''gross negligence,'' when used in an instruction, should be defined. *Wiser v. Chesley*, 53 Mo. 549; *Mueller v. Insurance Co.*, 45 Mo. 84. On the other hand, it has been held that a failure to define the words ''reasonable care and diligence,'' ''remotely,'' ''care and prudence,'' and ''by diligent inquiry,'' constitutes no ground for reversal. *Muehlhausen v. Railroad*, 91 Mo. 332; *Cottrill v. Krum*, 100 Mo. 200.

As said in the case last cited, it is not necessary that the meaning of ordinary words and phrases, used in their usual and conventional sense, shall be explained in instructions. There may be cases where the words careless and negligent, and their adverbs should be explained; but we do not see how the jury could have been misled in this case. There is an implied obligation arising out of the relation of landlord and tenant, that the tenant will use reasonable care to prevent damage to the inheritance (94 U. S. 53); and to carelessly permit stock to go into the orchard and destroy fruit trees, is a want of reasonable care. If the defendant desired an explanation of the term he should have asked it by request for further instruction.

This is technically an action for waste, and the damages to be allowed are the damages done to the inheritance—to the farm. The contention that, the instruction allows damages for injuries to the trees, treating them as personal property, is rather too refined. The trees were a part of the farm, and must

have been so regarded by the jury. There is no error in the instruction calling for a reversal; certainly not, in the absence of any request for further instructions.

5. Appellant asks leave to remit the excess before mentioned, and that the judgment be affirmed for the balance. As the excess can be easily ascertained from the special findings of the jury, the request should be granted, according to the well-settled practice of this court. But the sureties on the appeal bond, though not parties to this record, appear by counsel and object to such a disposition of the case. They insist the judgment should be reversed and the cause remanded. In support of this claim, they file affidavits to the effect that Henry has become insolvent since the appeal was taken, and that he failed, neglected and refused, to indemnify them as he had agreed to do. · It may be stated here that one of the objects of requiring an appeal bond is to protect the respondent against the insolvency of the appellant. Again, this respondent has, and had, nothing whatever to do with any difference between the appellant and the sureties concerning the agreement of appellant to indemnify them.

But the appeal bond, itself, is a full and complete answer to the objection made by the sureties. As that bond is not before us, we must assume that it complies with the requirement of the law. According to the statute, the conditions of the bond are, "that the appellant will prosecute his appeal with due diligence to a decision in the appellate court; shall perform such judgment as shall be given by such court, or such as the appellate court may direct the circuit court to give; and if the judgment of such court, or any part thereof, be affirmed, that he will comply with, and perform, the same, so far as it may be affirmed." It will be seen that the appeal bond, by its own terms, contemplates that the judgment may be affirmed in part only, and

the sureties bind themselves for the performance of the part so affirmed. The question of entering a remittitur should be disposed of according to law and the practice of this court without regard to the sureties on the appeal bond. The respondent remits the sum of $474.39, and the judgment of the lower court is affirmed for the balance. Respondent will pay the costs of this appeal. All concur.