The C. P. Deatherage Lumber Company, Appellant, v. Robt. M. Snyder, Respondent.

Kansas City Court of Appeals, March 23, 1896.

1. **Contract:** INSTRUCTIONS: DEFENSE. A contract between a landowner and a money-lender was that the landowner should construct houses on his land like a given house and the money-lender would lend him so much money on each house so constructed. In an action by the landowner for failure of the money-lender to furnish the full amount of the money, he was not entitled to an instruction that, though the houses did not conform to the requirements

of the contract, yet, if they were as valuable and as good security as they would have been if they were exactly and strictly like the given house, then the money-lender suffered no damage and was bound by his contract to furnish the full amount of the money. *Quantum meruit* cases *distinguished.*

2. ———: ACTION: QUANTUM MERUIT. Where the petition counts on the contract, there can be no recovery of *quantum meruit.*

3. Definitions: INSTRUCTIONS: SUBSTANTIAL AND SUBSTANTIALLY. In this case there was no error in using the words "substantial and substantially" without defining them.

*Appeal from the Jackson Circuit Court.*—HON. C. L. DOBSON, Judge.

AFFIRMED.

*Botsford, Deatherage & Young* for appellant.

(1) The object and root of the contract for building the houses was to furnish security for the loan. This was accomplished and the contract substantially complied with by showing that the houses were as valuable and as good security as built, as they would have been had no changes been made. Minor changes and defects will not prevent recovery. Plaintiffs' instructions numbers 12 and 5 should have been given and the testimony offered by it on this point should have been admitted. *Hovey v. Pitcher,* 13 Mo. 191; *Pitcher v. Hovey,* 16 Mo. 436; Bishop on Contracts, sec. 1421; *Chandler v. State,* 38 Ark. 197; *Loren v. Hillhouse,* 40 Ohio St. 302; *Rees v. Smith,* 1 Ohio, 124; Clark on Contracts, pp. 591, 628, 629; *Schalk v. Kingsley,* 42 N. J. L. 32; *Ellerbe v. Barney,* 119 Mo. 632–639; 3 Am. and Eng. Encyclopedia of Law, p. 922, subd. 95; *Union Depot Co. v. Railroad,* 113 Mo. 213; *Brannock v. Elmore,* 114 Mo. 55; *Railroad v. Tygard,* 84 Mo. 264; *Lewis v. Land Co.,* 124 Mo. 672–686, and cases cited. (2) The court erred in not defining the

word "substantially" so that the jury might under-
stand that mere technical, inadvertent and unimport-
ant omissions or changes would not prevent recovery.
This was asked in plaintiff's instruction number 12,
which should have been given. *Ampleman v. Ins. Co.,*
35 Mo. App. 308; *Ampleman v. Ins. Co.,* 35 Mo. App.
317; *Miller v. Boot & Shoe Co.,* 26 Mo. App. 57. (3)
The contract sued on was in the nature of a building
contract, and the rule in such cases is that a builder
can recover on a *quantum meruit,* not exceeding the
contract price, less any damages suffered by the other
party by reason of failure to fully comply. *Yeats v.
Valentine,* 56 Mo. 530; *Haysler v. Owens,* 61 Mo. 275;
*Eyerman v. Cemetery Ass'n,* 61 Mo. 491; *Linnenkohl v.
Winkelmeyer,* 54 Mo. App. 570; *Heman v. Improvement
Co.,* 58 Mo. App. 480; *M'fg Co. v. School District,* 54
Mo. App. 371-380. (4) But if suit is brought on the
contract, only substantial compliance must be averred
and proved. What is a substantial compliance of a
building contract, is for the court to determine and to
so instruct the jury. *Lumber Co. v. Warner,* 93 Mo.
374; *Fruin v. Railroad,* 89 Mo. 397; *Boteler v. Roy,*
40 Mo. App. 234; 2 Addison on Torts, secs. 864, 865.
(5) The object and purpose of the contract should be
considered in determining what is or what is not a sub-
stantial compliance therewith. *Lewis v. Land Co.,* 124
Mo. 672, 686; *Railroad v. Tygard,* 84 Mo. 264; *Ellerbe
v. Barney,* 119 Mo. 632, 639; *Union Depot Co. v. Rail-
road,* 113 Mo. 213; *Brannock v. Elmore,* 114 Mo. 55;
Bishop on Contracts, sec. 1421; Clark on Contracts,
591, 628, 629; *Conn v. McCullough,* 12 Mo. App. 356;
3 Am. and Eng. Encyclopedia of Law, p. 922, subd. 95.

*Warner, Dean & McLeod* for respondent.

(1) The proposition urged that there was error in
the court's rulings in refusing to instruct the jury that

if the houses erected were as valuable and as good
security for the loans to be made thereon as if built
according to the contract the plaintiff was entitled to
recover, is fundamentally erroneous.    The authorities
of the plaintiff on this proposition are wholly irrelevant.
Even upon the assumption that the foregoing proposi-
tion is correct, plaintiff can not recover in this action.
He declares on the contract.    The evidence establishes
beyond question, and the jury found that the contract
was not complied with.    If he were authorized to re-
cover on a *quantum meruit* he should have filed plead-
ings appropriate for such a remedy.    The authorities
are clear and explicit upon this point.    Having declared
upon the special contract he could not recover on a
*quantum meruit*.    *Eyerman v. Cemetery Ass'n*, 61 Mo.
489; *Davis v. Brown*, 67 Mo. 313; *Bank v. Payne*, 31
Mo. App. 521; *Halpin v. Manny*, 33 Mo. App. 388,
392; *Warson v. McElroy*, 33 Mo. App. 553; *Lewis v.
Slack*, 27 Mo. App. 129; *Mohney v. Reed*, 40 Mo. App.
99.    A party can not sue upon one cause of action and
recover upon another.    *Clements v. Yeates*, 69 Mo. 625;
*McNichol v. Express Co.*, 12 Mo. App. 405.    (2) The
court instructed the jury that if the contract had been
"substantially" complied with, and if there had been
a "substantial" compliance therewith, the plaintiff
should recover.    It is urged that such instructions were
erroneous; that the adverb "substantially" and the
adjective "substantial" should not have been employed
without further definition.    These words are in common
use.    They have no technical meaning.    Their mean-
ing is known to the average man, and it must be pre-
sumed that they were known to the jury.    No more
appropriate words could have been employed to have
clearly stated the proposition of law announced by the
court in the instructions in which these words are
found.    *Lewis v. Lund Company*, 124 Mo. 686; *Owens*

*v. Pierce*, 5 Mo. App. 575; *Laramore v. Legg*, 23 Mo.
App. 645; *Warden v. Henry*, 117 Mo. 530; *Brewing
Company v. Linck*, 51 Mo. App. 478; *Steinwender v.
Creath*, 44 Mo. App. 356; *Smith v. Clark*, 58 Mo. 146;
*Marble Company v. Baum*, 51 Mo. App. 204; *Fogus v.
Railroad*, 50 Mo. App. 250.

GILL, J.—In October, 1889, defendant Snyder
entered into a contract with one Walker, wherein Sny-
der agreed to loan Walker $12,000, to be used in the
construction of six houses on some Kansas City lots
owned by Walker. Snyder was to take as security a
deed of trust for $2,000 on each house and the real
estate it occupied. It was what is called a building
loan. Snyder was to pay out the money on Walker's
order, from time to time as the buildings progressed.
It was alleged in the petition, and the evidence quite
conclusively shows, that it was agreed by Snyder and
Walker that he (Walker) "would erect and build upon
the real estate aforesaid six brick houses two stories
high, and *alike in plans, materials, and details* as certain
brick houses owned and erected by one Kresky on a
lot situated or facing on Benton avenue, in Kensington
addition," Kansas City.

The petition further alleges that Walker complied
with his agreement, but that Snyder refused to pay
$1,200 of the money he had agreed to loan. C. P.
Deatherage became interested in the transaction in that
he signed, as security, a bond that Walker made to
Snyder for the faithful performance of the contract,
and from the further fact that the Deatherage Lumber
Company furnished the lumber used in the houses.
And in this bond it was recited that Walker had pro-
cured the loan from Snyder on "the representation
and assurance that he (Walker) will erect upon said
described land certain buildings, consisting of six brick

residences, etc., * * * the houses to be duplicates of two houses now erected in Kensington by Kresky.''

Walker assigned his claim for the alleged balance of $1,200 to the plaintiff, who brought this suit.

The substance of the defense, as set up in the answer, was that Walker failed to erect the houses according to the plans and specifications agreed on; that the work and materials were inferior, and that defendant then agreed "with said Walker and said Deatherage, who had procured an order from said Walker for the balance due upon said loans, that in view of the inferior manner in which said houses were being erected, said loans should be reduced to $1,800 upon each house, instead of $2,000, and that said notes so executed as aforesaid should each be entitled to a credit of $200, and that the interest coupons be reduced to represent interest upon $1,800 instead of $2,000. That in pursuance of said agreement with said Walker and Deatherage, he paid out to said Deatherage, or to his order, the full amount due upon said loans, so that no indebtedness remains due from him on account thereof.''

Of the evidence it is sufficient to say that it tended strongly to sustain the allegations of the answer. Defendant's evidence tended to prove that the six houses were not built according to the plans and specifications agreed on; that they were not such houses as those erected by Kresky, either in size, quality of material, or character of workmanship, and failed in many substantial particulars to come up to the standard fixed by the contract. And in addition to this the testimony showed that Walker and Deatherage allowed mechanics' liens to accrue for materials used in the erection of the houses. When the houses were nearing completion, Walker, it seems, abandoned the work and cast the burden on his bondsman, Deatherage. It was then,

according to Snyder's testimony, that he and Deatherage came together, and it was agreed that if the mechanics' liens were paid off, the loans should be reduced from $2,000 to $1,800, on each house; that such liens were satisfied and discharged, and Snyder paid out all that he had agreed to under the terms of said settlement. Deatherage, however, denied that any such settlement or reduction of the loans was agreed to.

On a trial by jury, there was a finding and judgment for defendant, and plaintiff appealed.

It must, of course, be conceded that the plaintiff occupies the same, and no better, position in this action, as would Walker, if the suit was prosecuted by him. The jury were in effect instructed that before they could find for the plaintiff for the alleged balance claimed on the loan, they should believe from the evidence that Walker had constructed the houses substantially according to the terms of the contract, that is, substantially like the Kresky houses. And again the jury was further instructed that if the parties got into a controversy as to the character of the houses, and settled such differences by agreeing that the loans should be reduced from $2,000 to $1,800 on each house, and that Snyder did lend and pay that amount, then the verdict should be for defendant.

Plaintiff, by evidence offered and instructions requested, sought to have the court submit the theory that even though the houses erected by Walker did not conform to the plans and specifications of the Kresky houses, yet if they were "in all respects as valuable and as good security for said loans as they would have been if they were exactly and strictly like said Kresky houses; and that said defendant Snyder had suffered no damage by reason of the manner in which the said houses were built," then said Snyder had no cause to complain and was bound to pay over the balance of

said $12,000. The court refused to adopt this theory of the plaintiff and the propriety of the ruling comprises the principal matter here complained of.

In our opinion, the trial court ruled correctly. In loaning his money, Snyder had the right to select the conditions under which he would let Walker have it. If he (Snyder) exacted security of a particular character and Walker agreed to furnish it, then, on the clearest principles, Snyder could decline to part with the money until the security agreed upon was forthcoming. A party can not force upon the other contracting party something substantially different from that contracted for, even though the substituted article may be the equal or superior in value to that specified in the agreement. *Halpin v. Manny*, 33 Mo. App. 388. To hold otherwise would be to concede the right or power in one contracting party, without the consent of the other, to annul, change, or modify the terms of the joint agreement.

The case in hand furnishes no opportunity for the application of the doctrine that where one under contract erects an improvement upon the land of another, the builder may recover what the improvement is reasonably worth to the landowner, even though the work or materials are not of the quality contracted for. In the first place, this is an action founded on a contract and not in *quantum meruit*. The petition alleges that a specific contract was entered into between plaintiff's assignor and the defendant, whereby it was agreed that Walker was to construct on his lots six houses of a particular character, and that defendant promised to loan him (Walker) a definite sum of money on each of them; that Walker performed his part of the agreement, but that defendant refused to loan the money. On this state of the pleadings, it is well settled that plaintiff can not recover anything until compliance of

the one and the default of the other is shown. Where the petition counts on the contract, there can be no recovery on *quantum meruit.* Judge WAGNER thus states the law: "Where a party fails to perform his work according to the stipulations of his agreement, he can not recover on the special contract; but if the services rendered by him, or the materials furnished, are valuable to the other party, and are accepted by such party, then he would be liable to pay the actual value of the work performed, or the materials furnished, not exceeding the contract price, after deducting for any damage which had resulted from a breach of the agreement. There may be a recovery upon a *quantum meruit*, although the contract has not been complied with, but in such a case the petition must be grounded on a reasonable value, and it must not be declared on the contract. If the action is brought upon the agreement, a performance of its terms must be shown before a recovery can be sustained." *Eyerman v. Cemetery Ass'n*, 61 Mo. 489.

In the second place, even if the pleadings justified it, the facts of this case do not come within the line of cases alluded to. The rule invoked has its origin in, and sole application to, a state of facts *sui generis*. The general rule is that if one agrees to do something, or furnish something to another in a particular manner, or of a certain quality, for which such other is to pay a stipulated price, he must do the thing, or furnish the material, as agreed, or he can recover nothing. But where the owner of land contracts with a party to erect thereon a building of certain dimensions, character, and quality, and the contractor fails to do as he agreed, but shall construct an improvement which, though not up to the standard of the agreement, is yet of value to the owner, the law will imply a promise to pay a reasonable value for the benefit thus conferred. In such

cases it is held unreasonable and unjust that the land-owner shall without compensation use and enjoy the fruits of another's labor, or material used in erecting improvements which can not be taken away. The case in hand is quite different from those just noticed. In the erection of the six houses, Walker conferred no benefit on defendant's property. Snyder simply proposed that if Walker would erect certain defined improvements on his (Walker's) real estate, that he (Snyder) would loan thereon a certain amount of money, and this proposition Walker accepted. But he failed to build the houses as agreed, and, being in default, has no right to call on Snyder for the money. Walker was deprived of nothing; he had the lots and houses, just as though the contract for the loan had never been made. The covenants of the parties were not independent, but dependant. On the performance of certain stipulated undertakings by Walker, Snyder agreed to loan the money; and in order to put Snyder in default, it was incumbent on Walker first to perform his part of the contract.

Complaint is made that the trial court erred in using the words *substantial* and *substantially*, in declaring Walker's duty in erecting the particular houses according to the contract, without defining the meaning of *substantial*, etc. For example, the court told the jury that before plaintiff could recover, they should believe from the evidence that said buildings "were constructed *substantially* in accordance with said specifications," etc. We think there was no error in the use of this language, or, at all events, the failure to define the word *substantially* could work no harm to the plaintiff. The word is one of common use and well understood by the man of ordinary intelligence. The jury would understand that they were to ignore mere unim-

VOL. 65 app—37

portant deviations from the plans and specifications, and were to take notice of such only as were material and substantial.

We have considered other minor questions mentioned in the brief, but think it unnecessary to discuss them in this opinion. The foregoing disposes of the substantial features of the controversy. We find the instructions to include and embody every principle of law applicable to the case; the judgment was clearly for the right party and will be affirmed. All concur.