## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

#### AT THE,

#### OCTOBER TERM, 1900.

---

*( Continued from  Volume 85.)*

---

DAVID GOLDSMITH, Respondent, v. EMIL WAMS-
GANZ and JOHN STUCKES, Appellants.

### St. Louis Court of Appeals, November 20, 1900.

**Instruction.** It is not error on the part of the trial court to fail to
instruct the jury as to the definition of the word "employ." Employ
is a common English word, and has an every day meaning, concern-
ing which no intelligent jury could err.

Appeal from the St. Louis City Circuit Court.—*Hon.*
*Franklin Ferris*, Judge.

AFFIRMED.

*Frank A. C. MacManus* and *Clifford B. Allen* for appel-
lants.

Whether or not plaintiff was "employed" by the defend-
ants is a question of law, for the court, upon conceded or es-
tablished facts, but if the evidence is conflicting it is the duty

Vol. 86 app.—1   •   (1)

of the court to instruct what facts, if found, constitute an "employment." Painter v. Ritchey, 43 Mo. App. 113. Not only did the court not do this, but in this instruction it submitted this whole question of mixed law and fact to the jury, without any guide whatsoever to a proper determination of the question. But that is not all. It emphasized this fatal error by employing a very misleading term. "To employ," in the language of the dictionary, means "to use," as an agent, servant, or representative. "Use" implies "the act of employing," "employ" implies action. We use a pen, and employ a person, "confidential friend is employed to negotiate; an inferior servant is made use of to carry on an intrigue." In State v. Canton, 43 Mo. 51, the word "employed" was decided not necessarily to import an engagement, or rendering services for another. "A person may as well be 'employed' about his own business as in the transaction of the same for a principal." There is not the slightest intimation that the word is an equivalent to hire and implied both a request to labor, and a promise to pay therefor.

*T. J. Rowe* for respondent.

(1) The chief point raised by the defendants on this appeal is the extremely technical one that the court committed error in submitting to the jury the question whether the plaintiff "was employed by the said defendants jointly to act for them" without defining what was meant by this expression. If this objection were technically correct, it would afford no basis for a reversal of the judgment of the trial court, since it is not to be conceived that any prejudice could have resulted therefrom to the defendants. The defendant Wamsganz admitted the employment of the plaintiff; and as to the defendant Stuckes, it would be repugnant to our under-

Goldsmith v. Wamsganz.

standing to suppose that the jury would have found against him if they had concluded or found from the evidence that he did not employ the plaintiff. But there is no merit whatsoever to this technical objection. No language in regard to this matter could be more apt or more precise and to the point than that which has been used by our supreme court in the following cases: "The court is not called upon to define the plain or ordinary words of the English language. Our experience leads us to conclude that very often the attempted definition is so involved that it tends to confuse rather than elucidate, and words and phrases, otherwise readily understood and in common use, are rendered obscure by the definition. It is safe to assume that our juries are men of average intelligence, and if they were in this case they certainly comprehended the meaning of the phrase 'a morbid and insane delusion.'" Farmer v. Farmer, 129 Mo. 538. (2) "An attempt to simplify would only end in mystifying and this demand for explanation of such common expressions readily understood by all people of ordinary intellect is without reason. It assumes an ignorance on the part of the jurors, which, if true, would stamp the jury system as a fraud." State v. Sattley, 139 Mo. 491. (3) "The use of words which have a legal technical meaning in instructions to the jury should be avoided, or, if necessarily used, their meaning should be explained. Thus the unexplained use of words 'preponderance of the evidence,' 'legitimate purpose,' '*prima facie*,' and similar phrases, without explanation of their meaning has been repeatedly condemned by the courts of last resort in this state (citing cases). But in none of these cases was the error deemed sufficient to warrant a reversal." Miller v. Boot & Shoe Co., 26 Mo. App. 63.

BIGGS, J.—The plaintiff is an attorney at law. He

sues to recover the value of certain legal services alleged to have been rendered by him at the request of the defendants, Emil J. Wamsganz and John Stuckes. His evidence tends to show these facts: In 1897, controversies arose between one Gus Wamsganz on one side and the defendants on the other, concerning the affairs of the St. Louis Candy Company (a corporation), and another business concern conducted by Gus and known as "The Hawthorne." At that time all of the capital stock of the candy company stood in the names of Gus and Emil. Stuckes claimed to be the real or equitable owner of some of the stock. Emil conceded this claim, but Gus denied it. The business of "The Hawthorne" was conducted in the name of Gus; Stuckes and Emil claimed to be partners in that business, which Gus denied. The plaintiff was employed to represent the defendants in the settlement of these controversies. After negotiations between Gus and plaintiff, which extended through several months, all of the disputes were amicably adjusted. The result of the settlement was that the defendants transferred to Gus all their interest in "The Hawthorne," and Gus transferred to Emil all his shares in the St. Louis Candy Company, and Emil transferred a portion of the shares to Stuckes. The plaintiff claimed that seventy-five dollars had been paid on the joint account, for which he gave credit.

On the part of defendants, Stuckes testified, that he did not employ the plaintiff in the settlement of the disputes with Gus Wamsganz; that he had not authorized any one to do so for him, and that Emil had no authority whatever to bind him in such a contract. He further testified that the only business transaction he ever had with plaintiff concerned the recovery of a claim he held against the candy company; that he told plaintiff he was a poor man and unable to pay large fees, and that plaintiff thereupon said that he would risk get-

ting his fee out of the St. Louis Candy Company. It also appeared in the investigaton (which took a wide range), that at a time prior to the difficulties with Gus the plaintiff was employed by Ida Wamsganz (a sister of Emil and Gus) in reference to some matters connected with the business of the candy company, and for which the plaintiff was paid. It was also in evidence that at the time the plaintiff was representing the defendants he accepted employment from one Ringen to aid in the collection of some notes held by Ringen against the candy company, and for which the plaintiff was paid by Ringen. The evidence, however, showed further as to that matter that this employment was accepted by plaintiff at the suggestion of the defendant to aid in compelling a settlement with Gus and that such was its effect. Upon this state of the proof the court gave to the jury the following charge:

"In the suit of David Goldsmith against Wamsganz and Stuckes the court gives you the following instructions:

"In this case the plaintiff charges and sues the two said defendants jointly. It is therefore necessary that he shall prove that he was employed by the said defendants jointly to act for them, and that he did act for them jointly in rendering the services for which he is suing in this case, before he can recover a verdict against them.

"If therefore you believe from the greater weight of evidence (the burden being upon plaintiff to establish his case by the greater weight of evidence), that the said defendants employed plaintiff to act for them jointly in adjusting and settling controversies between them and Gus Wamsganz in relation to their respective interests in the St. Louis Candy Company and in the business conducted under the name of 'The Hawthorne;' and if you further believe that plaintiff did thereupon represent and act for said two defendants, in

said matters; then plaintiff is entitled to recover from said defendants for the said services. If you find from the evidence that plaintiff was paid seventy-five dollars by defendants on account of said services and that it was there agreed by plaintiff and defendants that plaintiff should receive for said services, the further sum of three hundred and seventy-five dollars, then you will find for plaintiff and against said defendants, Wamsganz and Stuckes, and assess plaintiff's damages at said sum of three hundred and seventy-five dollars with interest at six per cent per annum from January 4, 1899, the date when this suit was filed. If however you find the plaintiff did render the services as stated above, but that there was no agreement as to the amount to be paid therefor, and that seventy-five dollars was paid on account of said services, and that the services were reasonably worth more than seventy-five dollars, then you should render a verdict for plaintiff for such sum as you believe from the evidence is the fair and reasonable value of such services after deducting the seventy-five dollars paid on account, and on such sum plaintiff will be entitled to interest at six per cent per annum from January 4, 1899, the date of filing suit, and in event you find for plaintiff you will compute the interest and add the interest to the principal and put the aggregate in one sum in your verdict.

"If on the other hand you find and believe from the evidence that plaintiff was not employed by the defendants, Wamsganz and Stuckes, to represent and act for them jointly, or that there was no agreement as to the amount to be paid, and that the reasonable value of said services was not greater than the amount paid, seventy-five dollars, then you will find for defendants.

"The evidence and the opinion of the lawyer who testified as an expert as to the value of the plaintiff's services is to be

considered by you in connection with all the facts in the case. You are not bound to act upon such opinion to the exclusion of other testimony. You may give it such weight as you may think it entitled to, or, if you think under the evidence in this case that his opinion is unreasonable, disregard it. You are to determine from the whole evidence, giving such expert opinion such weight as you think it entitled to, the reasonable value of plaintiff's services, if you should find for plaintiff, and believe that there was no agreement as to the amount to be paid to him. You are further instructed that plaintiff can recover in this case only for services rendered to Wamsganz and Stuckes individually, and for which he has as yet not been paid. The corporation would not be liable for any services rendered these defendants as individuals. You will not consider any payments which may have been made to plaintiff by Ida Wamsganz, any payment by her is not material to the issues in this case.

"If you should believe from the evidence that plaintiff has been paid by John Ringen for any part of the services for which he is suing in this case, then he can not recover for such services, paid for by John Ringen, if any, from these defendants, but the mere fact that the settlement of the controversy in evidence involved a settlement of John Ringen's notes would not prevent plaintiff recovering from defendants Wamsganz and Stuckes for services rendered them."

The verdict and judgment was for the plaintiff and the defendants have appealed.

I.　The chief complaint made against the charge is that the court failed to define the word "employed." This objection is devoid of merit. "Employ" is a common English word and has an everyday meaning, concerning which no intelligent jury could err. The supreme court has treated of

this question in a very pertinent way. It said: "The court is not called upon to define the plain or ordinary words of the English language. Our experience leads us to conclude that very often the attempted definition is so involved that it tends to confuse rather than elucidate, and words and phrases, otherwise readily understood and in common use, are rendered obscure by the definition. It is safe to assume that our juries are men of average intelligence, and if they were in this case they certainly comprehended the meaning of the phrase 'a morbid and insane delusion;' Farmer v. Farmer, 129 Mo. 538." In accordance with this sensible rule the appellate courts of the state have held that it was not error for the trial court to fail to instruct the jury as to the meaning of the word "carelessly," (Warder v. Henry, 117 Mo. 530); the phrase "diligent inquiry" (100 Mo. 397); the term "reasonable care and diligence" (Johnson v. Railroad, 96 Mo. 340); the words "remotely," "prudence" and "care" (Muehlhausen v. Railroad, 91 Mo. 332); the word "ratification" (Young v. Crawford, 23 Mo. App. 432); the word "accrued" (McDonald v. Nicholson, 67 Mo. App. 408), and the word "substantial" (Deatheridge Lumber Co. v. Snyder, 65 Mo. App. 568). This objection to the instruction will therefore be overruled.

II.   The next objection to the charge is the contention that there was evidence tending to show that the plaintiff did not intend to charge Stuckes for his services, and that therefore the court erred in ignoring this defense. It suffices to answer that there is no such testimony preserved in the record. The only evidence having the remotest tendency to prove an agreement for gratuitous service concerns the collection of the claim of Stuckes against the candy company. That matter was entirely independent and apart from the business difficulties with Gus Wamsganz. And even as to

Goldsmith v. Wamsganz.

that claim the testimony of Stuckes is not sufficient to warrant the inference that plaintiff undertook to serve him without reward.   This objection will likewise be overruled.

III.   Complaint is made of the reference in the instruction to the credit of seventy-five dollars.   Stuckes testified that he did not make the payment.   The money was paid by Emil Wamsganz.   If Emil and Stuckes were acting jointly in the adjustment of their business difficulties with Gus Wamsganz as the jury found, then Stuckes ought not to complain because he got the benefit of the credit.   There is no merit in this objection, and it will be overruled.

IV.   Lastly, it is claimed that the evidence tends to show that Ringen's interest was antagonistic to that of defendants, and if true, the action of the plaintiff in accepting employment from him would debar plaintiff from making a charge against the defendants.   The latter insist that under this state of the proof the court erred in failing to submit that phase of the case to the jury.   A complete answer to the contention is that the entire evidence tends to show that Ringen's notes represented just debts against the candy company and that they were past due and that the plaintiff undertook to represent him in collecting them at the suggestion of Emil and with the view of compelling Gus Wamsganz to make a settlement with defendants.   There is certainly no merit in this assignment.

With the concurrence of the other judges the judgment of the circuit court will be affirmed.   All concur.