GEORGIA KITCHEN, Appellant, v. CITY OF CLINTON.—8 S. W. (2d) 602.
ROBERT BARRIE v. TINA TOLLER ET AL., Appellants.—8 S. W. (2d) 602.

Division One, July 3, 1928.

D. W. *Peters* for appellants.

570

*J. A. Gilbreath, C. A. Calvird, Jr.* and *W. E. Owen* for respondents.

SEDDON, C.—The above entitled and numbered causes were consolidated by order of this court, and were argued, briefed and submitted by the respective parties as a consolidated cause. Both causes involve the same facts and questions of law; and consequently the separate appeals in both causes may properly be ruled by one opinion. For brevity, we will refer to the first cause as the Kitchen case, and to the other as the Barrie case.

The Kitchen case is an action in equity, in which the plaintiff, Georgia Kitchen, an owner of real property abutting on Third Street in the city of Clinton, sought to permanently enjoin said city from letting a contract for the grading, curbing and paving of said Third Street between Wilson and Elm streets. A temporary restraining order or injunction was not asked by plaintiff or granted by the circuit court, nor was an injunction bond filed in the cause, whereupon the city proceeded to let the contract for said street improvement, and the improvement provided for by the contract was in due time completed by the contractor, accepted by the municipal officials, the several tracts of land liable for the cost of the improvement were

assessed therefor, and special tax bills, evidencing such assessments, were issued by the city and delivered to the contractor. Thereafter, plaintiff amended her petition and sought to have the tax bill, evidencing the local or special assessment against her real property, declared invalid and void, and that the city, and all persons into whose hands said tax bills may fall, be enjoined from attempting to collect or enforce the same as a lien against plaintiff's real property.

The plaintiff in the Barrie case is the assignee and owner of the special tax bills issued by the city of Clinton for the grading, curbing and paving of Third Street in said city between Wilson and Elm streets, as provided by the contract aforesaid. As assignee and owner of said tax bills, plaintiff commenced seventeen separate suits in the Circuit Court of Henry County to enforce the liens and payment of certain of said tax bills against the respective owners of the real property respectively described in said tax bills. By order of the Circuit Court of Henry County, the seventeen separate suits were consolidated and tried as one consolidated cause, under the title, Robert Barrie, plaintiff, v. Tina Toller et al., defendants.

Both the Kitchen and Barrie cases were tried to the court without the aid of a jury, resulting in separate judgments against the several property owners, and in favor of Barrie, the assignee of the tax bills, and the city of Clinton. After unsuccessful motions for new trial and in arrest of judgment, the respective parties against whom such judgments were entered were allowed appeals to this court. The aggregate amount of the special tax bills involved in said consolidated causes exceeds the sum of $7500, exclusive of court costs, and we retain jurisdiction of the appeals therein for the reason that the amount in dispute, exclusive of costs, in the consolidated causes exceeds the minimum of our pecuniary jurisdiction. [Art. 6, sec. 12, Const. Mo.; Aufderheide v. Polar Wave Ice & Fuel Co. (Mo. Sup., En Banc), 319 Mo. 337, 4 S. W. (2d) 776, 1. c. 801.]

It is contended by appellants that the city of Clinton was ousted of jurisdiction to proceed with the improvement of Third Street in question, and to let a contract therefor, because of the filing by a majority in number, and in frontage of abutting property, of the resident property owners interested in the improvement of said Third Street between the intersecting streets aforesaid. Respondents insist that the remonstrance so filed was insufficient and ineffective in that it was not signed by a majority in number of the resident owners of property abutting on said street, and therefore that the city of Clinton was not ousted of jurisdiction to proceed with the improvement in question; and, furthermore, that the council of said city, by ordinance duly enacted by the council and approved by the mayor of said city, made the specific finding of fact that "a majority of the resident owners owning a majority of the abutting front feet of property liable

to taxation for said work did not file with the city clerk any protest against said improvements,'' which finding and determination by the city council is final, conclusive and binding upon the courts of this State. The appellants make no other attack herein upon the form, substance or regularity of the proceedings of the city council under which the improvement in controversy was made, or respecting the manner of letting and the manner of performance of the contract for said improvement, the acceptance of said work by the municipal officials, the amounts of the several special assessments levied against the respective tracts of real property abutting upon the street improved, or the form and sufficiency of the special tax bills evidencing such assessments. Therefore, the sole and single legal question to be ruled and determined herein is whether or not the remonstrance filed with the city clerk was sufficient in the number of signers, or protesters, to halt and arrest the making of the improvement, and to oust the council of jurisdiction thereover.

The city of Clinton is a city of the third class, and the statute respecting the making of street improvements applicable to said city (R. S. 1919, sec. 8324, as re-enacted by the 51st General Assembly, Laws 1921, 1st Ex. Sess., p. 117) is as follows: ''Before the city council shall be authorized . . . to grade, pave or gutter the roadway part of any street, when the improvement is to be paid for with special tax bills, they shall, by resolution, declare that they deem such improvement necessary to be made, and shall cause such resolution to be published in some newspaper printed and published in the city, for two consecutive insertions in a weekly paper, or seven consecutive insertions in a daily paper, *and if a majority of the resident owners of the lands that would be liable for the cost of the improvement*, at the date of the passage of the resolution, *who shall own a majority of the front feet owned by residents of the city, abutting on the street or part of street proposed to be improved,* shall not within ten days after the date of the last publication file with the city clerk their protest against such improvement, then the council shall have the power to cause the improvement to be made; *and if the council shall find and declare by ordinance that no such majority have so filed such protest, such finding and declaration shall be conclusive*, after the execution of the contract for the making of the improvement, and thereafter no special tax bill shall be held invalid for the reason that a protest sufficiently signed was filed with the clerk.'' (Italics are ours.)

It is conceded by the parties herein that the requisite resolution for the proposed improvement was duly adopted by the city council and duly published pursuant to the aforesaid statute, and that the remonstrance in question was filed with the city clerk within the time specified by said statute. It will be noted, from the italicized language

of the foregoing statute, that a remonstrance, in order to be effective to halt and arrest a proposed improvement, and to oust the council of jurisdiction to proceed with such improvement, must be signed and filed not only by resident property owners who shall own a majority of the front feet of real property owned by residents of the city and abutting on the street or part thereof proposed to be improved, but that such remonstrance must also be signed and filed by a majority (in number) of the resident owners of the lands that would be liable for the cost of the improvement. In other words, two majorities of *resident* property owners are required by the applicable statute, (1) a majority of the number of resident owners, and (2) a majority of front feet of property owned by such resident owners and abutting upon the part of the street to be improved.

It is contended by appellants that the remonstrance filed with the city clerk was signed by 45 resident persons, who constituted a majority in number of the resident owners of lands abutting upon that part of the street proposed to be improved and liable to taxation therefor, and who own a majority of the front feet of property owned by residents of the city and abutting upon said proposed improvement. The evidence discloses that the remonstrance so filed was referred to a committee of the city council, who reported to the council that "the remonstrance against said paving improvement contained the names of 45 resident owners of property and that there were fifty resident owners of property on said street who had not signed said remonstrance: that the signers of same owned 3916 (front) feet, and that the resident owners of property on said street who did not sign said remonstrance owned 2738 (front) feet." The minutes and official records of the city council in evidence recite that "the report [of the committee] was examined by the council and found to be correct, and same was received and filed and adopted, and the council found that same was insufficient in that it did not contain a majority of the resident owners of land who would be liable to taxation to pay for said improvement on said street, and that the council has the right to proceed with said improvement."

The evidence tends to show that the total number of individual and corporate owners of property abutting upon that part of the street improved is 108. It is conceded by the parties that four of the above total number of property owners are non-residents of the city of Clinton, and that one of said total number of property owners is the Clinton school district. It is also conceded that one individual who signed the remonstrance had no title to the property which she purported to own and represent, but that the title thereto was in her husband, who did not sign the remonstrance. Respondents contend that, excluding the remonstrator who had no title to the property she purported to own and represent, the remonstrance was signed and filed by only 44 legal remonstrators; and that, excluding the school

district and the four conceded non-residents of Clinton, there were 58 resident owners of property abutting upon the street improved who must be legally counted as non-remonstrators, thereby making a clear majority of non-remonstrators, out of the total number of property owners. The evidence also tends to show that in 24 instances the title to the respective tracts of land abutting upon the street improved was held by husband and wife as an estate by the entirety, and that in seven instances both husband and wife signed the remonstrance, whereas in three instances the remonstrance was signed by the husband alone, and not by both husband and wife. It is contended by appellants that in each such instance where the title was held in entirety by husband and wife, the ownership should be counted as one single ownership, and, therefore, that the total number of legal resident remonstrators should be reduced by seven, leaving 37 legal resident remonstrators in all. Contesting the claim of respondents that there were 58 legal resident non-remonstrators, appellants contend that there were 14 instances where title was held in entirety by husband and wife, and that respondents have counted each such ownership as two owners, or 28 in all, and hence that the total number of legal resident non-remonstrators must likewise be reduced by 14, leaving but 44 in all: and appellants insist further that respondents have counted among the total number of legal resident non-remonstrators five resident remaindermen whose ownership was subject to existing life estates enjoyed in two instances by two different resident individuals, and that the total number of legal resident non-remonstrators must be further reduced by five, leaving but 39 non-remonstrators: and finally, that in three instances where title was held in entirety by husband and wife, and the remonstrance was signed only by the three husbands, and not by the three wives, the three wives have been wrongfully counted by respondents as non-remonstrators, and therefore the total number of legal non-remonstrators must be further reduced by three, leaving only 36 legal resident non-remonstrators as against 37 legal resident remonstrators, thereby making the number of resident remonstrators a clear majority of the total number of resident property owners. In addition to the foregoing, we might say further that there was a sharp conflict in the evidence as to whether two of the remonstrators were residents, in fact, of the city of Clinton, or whether they were non-residents of said city. If, in fact, the two remonstrators were non-residents of the city of Clinton at the time they signed the remonstrance, then, according to appellants' theory of computation, there were but 35 legal resident remonstrators as against 36 legal resident non-remonstrators; or, according to respondents' theory of computation, there were only 42 legal resident remonstrators as against 58 legal resident non-remonstrators; and, therefore, according to either theory

of computation, the remonstrance filed was not signed by the requisite majority (in number) of the resident property owners interested in said improvement.

Assuming, for the moment, the correctness of appellants' theory that the five resident remaindermen should not be counted among the number of resident owners of property (without, however, admitting the soundness and legal correctness of such theory), nevertheless, if the respondents are correct in their theory that, in the 24 instances where title to property was held in entirety by husband and wife, the ownership in each such instance shall be legally counted as two, and not as one, the remonstrance filed still falls short of the requisite statutory majority in number of the resident owners of property abutting upon the street improved and liable to taxation therefor. Hence, we will first discuss and rule the legal contention of respondents that a husband and a wife holding an estate by the entirety is each an *owner* of property within the contemplation and proper legal construction of the statute aforesaid, by which statute the legal sufficiency of the remonstrance involved herein must be measured, and that each and both must be counted in computing the total number of resident owners of property for the purpose of determining the legal sufficiency of the remonstrance.

The precise question was recently ruled by the Springfield Court of Appeals, in Rhodes v. City of Springfield, 195 Mo. App. 182, 185, wherein FARRINGTON, J., speaking for that court, in construing the same or a similar statute, said: ''It appears by the record that there were some six or seven lots owned on this street by husbands and wives as estates by the entirety. Appellants contend that as to these respective lots there could be counted but one owner; that is, that the husband could not be counted as an owner and the wife as an owner so as to make two owners of the same piece of property; in other words, that in counting the owners of land (according to) the statute above referred to, the husband and wife are to be counted as but one owner and not as two owners. We disagree with appellants on this point, holding that a husband and wife owning an estate by the entirety are each owners within the contemplation of the statute under which this proceeding was brought and by which the remonstrance must be measured. The statute requires a majority of the resident owners of lands; it does not require a majority of the estates abutting the street. We think this question is clearly settled by the case of Holmes v. Kansas City, 209 Mo. 513, where the wife of a husband who had been made a party to a condemnation proceeding with reference to some land held by them as an estate by the entirety was permitted to enjoin the city and the contractor because she had not been made a party to the proceeding. . . . It cannot be doubted that both

the husband and the wife have an interest in the land that is conveyed to them by the entirety. This interest is based on no lien, or mortgage, or any relation to the land other than that of ownership. If the interest is not that of an owner, what else could the interest be in the land? . . . When we bear in mind that each, during the life of the other, may not affect the estate to the prejudice of the other's rights (Gibson v. Zimmerman, 12 Mo. 385), that both have a substantial interest in the property and are competent witnesses in an action by the wife for the recovery of the property irrespective of the marital relation (Edmondson v. City of Moberly, 98 Mo. 523), that the wife may maintain ejectment for the possession of the entire estate as against strangers (Bains v. Bullock, 129 Mo. 117), and that our married women's acts have abolished the legal entity of husband and wife, although such acts have not affected estates by the entirety, we are led to no other conclusion than that the wife as well as the husband owning an estate by the entirety is an *owner* within the meaning of the statute designating who are proper remonstrators. If one spouse desired the improvement and the other did not, the one wanting it could by refusing to remonstrate place a lien on the property which would result in a loss of the property were the tax bill not paid, and hence we would have a condition not countenanced by the law, wherein one of the parties could affect the estate to the prejudice of the other's rights. We hold that those signing this remonstrance as husband and wife were *each owners* of the land and were each to be counted as such.''

In Findley-Kehl Investment Co. v. O'Connor, 256 S. W. 798, our own court, en banc, was required to pass upon the sufficiency of a remonstrance against a street improvement filed by property owners pursuant to a provision of the Kansas City charter, which provided that, in case ''the resident owners of the city owning a majority of the front feet of all the lands belonging to such residents and fronting on the street . . . to be paved or macadamized, shall file with said board . . . a remonstrance against such paving or macadamizing, the power of the board to make the improvement shall cease for the period of six months from the date of the filing of such remonstrance, after the lapse of which period the proceeding may be begun by the adoption of a new resolution.'' The Kansas City charter provision there under construction differs quite materially from the statute under construction in the consolidated causes now before us. The statute now and here under construction requires that the remonstrance be signed and filed not only by the residents owning a majority of the front feet of property abutting upon the street proposed to be improved, but also by a majority in number of the resident owners of lands liable to taxation for the cost of the improvement; whereas, the

Kansas City charter (involved in the Findley-Kehl Investment Co. case) required that the remonstrance be signed and filed only by the resident owners of the city owning a majority of the front feet of all lands belonging to such residents and fronting on the street proposed to be improved. In the Findley-Kehl Investment Co. case, it appeared from the record that a tract of land, having a frontage of 659.54 feet upon the street to be improved, was owned by husband and wife as an estate by the entirety. The husband signed the remonstrance against the improvement, but the wife did not sign. The officials of Kansas City counted one-half the frontage of the tract, or 329.77 feet, in computing the total frontage signed for by the remonstrators, and excluded one-half of the frontage of the tract as not being signed for by the wife. This court, en banc, ruled that, inasmuch as an estate by the entirety is a peculiar and indivisible estate, the entire and actual frontage of the tract should be counted against the proposed improvement, although the husband alone signed the remonstrance. In the divisional opinion written by our lately departed and lamented brother, Judge GRAVES, and adopted as the opinion of the court, en banc, the learned writer of that opinion said (l. c. 802): "In the figures taken from the appellant's statement of the case here, there appears the following: 'One-half of Sills' tract, 329.77.' This means that they count only 329.77 feet when the whole frontage was double that amount. This tract appears to be owned by A. M. Sills and Fannie Sills, his wife. It appears to be an estate by the entirety. The husband alone signed. This peculiar estate raises the question as to how much of this frontage should be counted. Appellants concede a count of one-half, and respondents insist upon all. The ownership of Sills, who signed, pertained and attached to the whole frontage or estate and not to a part. This is true, although the wife was living. *She likewise was an owner of the whole.* We think this whole frontage should have been counted. [Rhodes v. City of Springfield, 195 Mo. App. l. c. 186, 187; 189 S. W. 641.]" (Above italics ours.)

Appellants herein contend that our ruling, en banc, in the Findley-Kehl Investment Co. case, as expressed by GRAVES, J., in the divisional opinion adopted by this court, en banc, is at variance with the ruling of the Springfield Court of Appeals in the Rhodes case, supra; respondents, on the other hand, contend that said ruling of this court, en banc, is in full accord with the aforesaid ruling of the Springfield Court of Appeals, and that this court has cited with approval the decision of the Springfield Court of Appeals in the Rhodes case, and has followed the law as declared therein. It is true that our own court, en banc, held in the Findley-Kehl Investment Co. case, in construing the meaning of the Kansas City charter applicable to that case, that, if only one spouse signed the remonstrance, nevertheless, the whole

frontage of the tract of land must be counted in determining the sufficiency of the remonstrance, since the signer was an *owner* of the entire frontage and estate; but, in referring to the interest of the wife, who did not sign the remonstrance, we also stated that "she likewise was an *owner* of the whole," citing the Rhodes case with apparent approval in support of the latter statement. We do not find the foregoing ruling of this court to be inconsistent or at variance with the ruling of the Springfield Court of Appeals in the Rhodes case, supra. We think that both of the cited decisions were rightly ruled upon correct and sound principles of law, and that they are authority for the holding that, where title to land is held by husband and wife in the entirety, each is an *owner* of the land in contemplation of the statute here involved, and that each and both must be counted as *owners* in determining the legal sufficiency of a remonstrance filed in pursuance of such statute. Adhering to the rulings in the aforecited cases, and counting husband and wife as two owners in the 24 instances where title to lands was held as an estate by the entirety, it is apparent that the remonstrance filed against the street improvement in question was legally insufficient in the number of signers to oust the city of jurisdiction to proceed in the making of such improvement, and therefore the tax bills in controversy are not invalid or void because of the action of the city council in disregarding such remonstrance.

Other interesting questions are ably and thoroughly briefed by counsel for the respective parties herein, but our conclusion and holding upon the legal question herein discussed and ruled makes unnecessary the discussion and consideration of such questions. It follows that the several judgments *nisi* in the consolidated causes before us must be affirmed, and it is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.