Louise MARKS, William P. Marks, James H. Harriss, Mrs. James H. Harriss, Val W. Lammert, Mildred Lammert, Albert H. Hopmann, Edna M. Hopmann, G. E. Boller, Agnes Boller, R. B. Anderson, Ethel Anderson, Alberta H. Golden, Lucian Erskine, Addine G. Erskine, Clayton W. McAuliff, Mabel McAuliff, Joseph F. Becker, Jr., and Alfrieda F. Becker, (Plaintiffs) Appellants,

v.

BETTENDORF'S, INC., ACF–Wrigley Stores, Inc., The City of St. Louis, and Tide Water Realty Co., (Defendants) Respondents.

No. 30401.

St. Louis Court of Appeals.

Missouri.

July 5, 1960.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 6, 1960.

Joseph A. Kirkwood, St. Louis, for appellants.

Barksdale, Abbott & Wallace, Clarence M. Barksdale and Robert R. Young, St. Louis, for respondent ACF–Wrigley Stores, Inc.

Thomas J. Neenan, City Counsellor, Thomas F. McGuire, Associate City Counsellor, St. Louis, for respondent City of St. Louis.

John J. Shanahan, St. Louis, for respondent Tide Water Realty Co.

WOLFE, Presiding Judge.

The opinion of the Judge to whom this case was assigned for writing failed of acceptance, and the case now comes to this writer upon reassignment.

Appellants brought this action to have a rezoning ordinance and another ordinance which vacated certain streets and alleys declared null and void and of no legal effect. Appellants sought to enjoin and restrain certain defendants from erecting any building contrary to deed restrictions and to enjoin and restrain the defendants from interfering with the free use of the streets and alleys vacated under the ordinance. The zoning ordinance reclassified a tract of land within the subdivision known as Wenzlick Park from Class "A", a single family dwelling zone, to Class "F", a local business zone. There was a decree in favor of the defendants on all counts, and the plaintiffs appealed.

Many of the facts were stipulated, and those about which there is no dispute are that the plaintiffs and the defendants all acquired their interest in the real estate owned by them in Wenzlick Park from a common grantor, Wenzlick and his wife. A plat and instrument containing restrictions upon the subdivision were filed and recorded by the Wenzlicks. The restrictions so filed were imposed by their terms upon all of the lots within the subdivision. One of the restrictions was that the buildings on the lots should conform to the building lines indicated on the plat recorded.

On December 7, 1956, the Board of Aldermen adopted Ordinance No. 48159 by a vote of fifteen ayes and seven noes. The ordinance changed the area from Class "A" residential to Class "F" commercial. The Mayor of the City failed to sign the ordinance, but returned it on January 11, 1957 to the Board of Aldermen, which was not within twenty days after it was presented to him, and consequently, under the charter, it became effective, unless declared invalid by this action.

Prior to the passage of the ordinance a petition was filed with the City of St. Louis purporting to be duly signed and acknowledged by the owners of ten percent or more of the area of land within the area determined by lines drawn parallel to and 185 feet distant from the boundary of the area which the Board of Aldermen rezoned by Ordinance No. 48159.

The plaintiffs claim that the petition invoked the operation of Section 89.060, V. A.M.S., 1949, which is as follows:

"Such regulations, restrictions, and boundaries may from time to time be amended, supplemented, changed, modified or repealed. In case, however, of a protest against such change duly signed and acknowledged by the owners of ten per cent or more, either of the areas of land (exclusive of streets and alleys) included in such proposed change or within an area determined by lines drawn parallel to and one hundred and eighty five feet distant from the boundaries of the district to be changed, such amendment shall not become effective except by the favorable vote of three-fourths of all the members of the legislative body of such municipality. The provisions of section 89.050 relative to public hearing and official notice shall apply equally to all changes or amendments (R.S. 1939, § 7416)."

The Board of Aldermen also passed Ordinance No. 48764 on March 14, vacating the streets which were within the residential part of the subdivision. Thereafter the vacated streets were curbed across at their conjunction with the streets in which they formerly ran. The adjoining property not rezoned by Ordinance 48159 was also owned by defendant ACF-Wrigley Stores, Inc., and consisted of property fronting on Chippewa Street, which had long been zoned as a local business district.

As to the validity of the ordinance vacating the streets, this court was in full accord, and we adopt the statement of the writer of the opinion that otherwise failed of concurrence. It is as follows:

"It is claimed by them (plaintiffs) that they have an easement in the property which abuts the vacated streets by reason

589

of the building line restriction and have an easement by grant and by implication over the platted streets and alleys, in that, they have a special interest in maintaining the public use to which they are dedicated. Because of these easements, which they claim are interests in real estate, they contend that they come within the category of 'owners of all property specially damaged' as set out in § 14 of Article XXI of the Charter of the City of St. Louis. Therefore, it is plaintiffs' position that, not having signed the petition for the vacation of the streets and alleys, Ordinance No. 48764 is void. The section of the Charter of the City of St. Louis referred to provides as follows:

" 'Nothing herein shall limit the power of the city by ordinance recommended by the board of public service to acquire property by private purchase, or to vacate any highway, street, boulevard, parkway, or alley without proceeding hereunder when the owners of all property specially damaged petition therefor and waive all damages.'

"In discussing this contention of plaintiffs it should be noted that no part of the real estate owned by the plaintiffs abuts on the streets and alleys vacated by said ordinance. The plaintiffs who testified stated that the vacation of the said streets and alleys did not deprive them of reasonable access to the general system of streets of the City of St. Louis.

"Plaintiffs assert that the words 'owners of all property' are all inclusive words descriptive of the holders of most any interest in real estate. We think the words as used in the Charter provision refer to the owners of the fee of the real estate and this is particularly true when the owner has to be one 'specially damaged.'

"In the case of Arcadia Realty Co. v. City of St. Louis, 326 Mo. 273, 30 S.W. 2d 995, l. c. 997, the Supreme Court said:

" '* * * In order for a property owner to sustain an injury special or peculiar to him on account of the vacation of a street, his property or some part of it must abut on the vacated portion, or else the vacation must deprive him of reasonable access to the general system of streets.'

"We have shown that plaintiffs were not deprived of reasonable access to the general system of streets by the vacation of said streets and alleys. Obviously, the property owner referred to in the Arcadia Realty Co. case, supra, was the owner of the fee.

"The effect of the vacation of said streets and alleys was to restore to the owners of the land fronting on each side thereof the title thereto out to the middle of said streets and alleys freed from the easement which the City had therein for public use prior to the passage of the vacation ordinance. Campbell v. City of Glendale, Mo.App., 211 S.W.2d 519.

"Certainly, the Charter provision did not contemplate the holders of all manner of easements to come within the words 'owners of all property.' To hold that all holders of easements come within the meaning of the words would be to include the holders of utility easements, which we are certain was never intended when consideration is given to the purpose of the Charter provision, namely, the authority to vacate streets and alleys. What we have said applies not only to the claimed easement by reason of the building line restriction, but to the alleged easement by grant and by implication over the platted streets and alleys. In connection with this latter claim we will show later that plaintiffs have no right in the platted streets and alleys different from those possessed by the general public in the general system of streets and alleys in the City of St. Louis. Plaintiffs, not having suffered damage differing in kind from that suffered by the general public, are not specially damaged within the meaning of the law. Bailey v. Culver, 84 Mo. 531; Christy v. Chicago B. & Q. R. Co., 240 Mo.App. 632,

212 S.W.2d 476; American Law of Property, Vol. 11, p. 497. We hold that it was unnecessary for plaintiffs to sign the petition requesting vacation of the questioned streets and alleys. So far as the record is concerned the petition was sufficient to authorize the passage of Ordinance No. 48764 by the Board of Aldermen of the City of St. Louis.

■■ "Plaintiffs attack the validity of this ordinance in another respect. Ordinance No. 45113 of the City of St. Louis requires the Director of Streets and Sewers of said City to post one or more signs 'within or adjacent to the area to be vacated' stating that a bill is pending before the Board of Aldermen to vacate the streets and alleys described in said bill. The ordinance further provides that the Director of Streets and Sewers shall notify the Clerk of the Board of Aldermen of the posting of the signs and thereafter, said Clerk, 'shall file such notice with the committee of the board of aldermen to which the bill was referred.' No time is specified in the ordinance when the notice is to be posted. Obviously, it should be posted within such time as to give interested parties an opportunity to be heard by the committee of the Board of Aldermen. Plaintiffs' witnesses said they saw the posted notice for the first time on March 11, 1958. The ordinance was passed on March 14, 1958. None of the records of the proceedings before the Board of Aldermen was introduced in evidence. There is nothing to show when or if the committee of the Board of Aldermen to which the bill was referred had a hearing. None of the plaintiffs' witnesses testified to making any effort to be heard by the committee of the Board of Aldermen. It is evident that some of the plaintiffs had seen the notices, but there is no evidence in the record that any of them attempted to be heard or were deprived of a hearing. There is nothing in the record to show that the bill was not in the committee at the time the notices were seen by some of the plaintiffs. There is no evidence as to what the records of

the Board of Aldermen show in connection with the time the notices were posted by the Director of Streets and Sewers. Ordinances are presumed to be validly enacted and the burden is on plaintiffs to show that the Board of Aldermen failed to follow all of the procedural requirements for the enacting of said ordinance. We think the evidence adduced by plaintiffs in support of the contention under review is insufficient to permit this court to hold that Ordinance No. 48764 is not valid.

"We now take up for discussion the next issue presented by the points relied on by plaintiffs. The trial court in its decree found that the restrictions providing for a certain building line and for all buildings to be erected on the front of the lots in Wenzlick Park Subdivision no longer serve the purpose for which they were intended with respect to the property of defendant ACF-Wrigley Stores, Inc., and from and after the effective date of Ordinance No. 48764 were without legal effect and not binding on said defendant's property.

"The court further found that the intention of the original grantors who created the restrictions under review was that the same should not continue or be in effect in the event the streets were vacated.

■ "In their first point under this issue plaintiffs contend that the agreement containing the restrictive covenants is unambiguous and that the trial court in construing the agreement committed error when, in effect, it added the words 'until such time as the streets and alleys are vacated.' We fail to see the applicability of this point. It is true that the rules governing the construction of contracts imposing restrictions on the use of realty are the same as those applicable to any covenant or contract, which includes the rule that when there is no ambiguity in the language used, then there is no room for construction. Porter v. Johnson, 232 Mo.App. 1150, 115 S.W.2d 529. Also included is the rule that the court in construing the restrictive covenants should give effect to

the intention of the covenantors as shown in the agreement and the plat, Schell v. City of Jefferson, 357 Mo. 1020, 212 S.W. 2d 430; City of St. Louis v. Koch, 335 Mo. 991, 74 S.W.2d 622; City of Caruthersville v. Huffman, 262 Mo. 367, 171 S.W. 323, and to the character of the restrictions. The building restrictions involved here are purely negative in character and if they have ceased to have any beneficial value to the property of plaintiffs they can form no ground for equitable relief. Hall v. Koehler, 347 Mo. 658, 148 S.W.2d 489. In this connection it should be observed that the law favors the free and untrammeled use of real property. Building restrictions limit the use of property and such restrictions are regarded unfavorably and are therefore strictly construed. Hall v. Koehler, supra; Gardner v. Maffitt, 335 Mo. 959, 74 S.W.2d 604 [95 A.L.R. 452].

. [9] "In their next point plaintiffs contend that the trial court erred in finding that the real estate owned by the defendants, ACF-Wrigley Stores, Inc., and Tide. Water Realty Company was freed of restructive covenants because those covenants no longer served the purpose for which they were intended, for the reason there was no such radical change within the subdivision as to warrant a destruction of the restrictive covenants.

"Before discussing this point we should call attention to several facts disclosed by the record. All of the lots within Wenzlick Park Subdivision abutting Chippewa Street show no building line restriction on the plat. These lots have been zoned for commercial use for many years. All of these lots east of Tamm Avenue on the north side of Chippewa Street, with the exception of four lots owned by defendant Tide Water Realty Company, are owned by defendant ACF-Wrigley Stores, Inc. The effect of the ordinance vacating said streets and alleys is to put the ownership of all land north of Chippewa Street, east of Tamm Avenue, south of the alley south of Mardel Avenue, and west of the east line of Wenzlick Park Subdivision (with the exception of the four lots owned by defendant Tide Water Realty Company) in one owner, namely, ACF-Wrigley Stores, Inc. This plot is the equivalent of three square blocks. The instrument containing the restrictions does not limit the use of said lots to residential purposes. This instrument permits unrestricted use of all the property within the subdivision for any purpose. The lots in question, namely, those abutting Lindenwood Avenue are vacant and have not been developed with residential buildings and the streets and alleys vacated have never been paved. The property, streets and alleys in question have been in this condition for thirty years.

* * * * * *

"Obviously, the building restrictions contained in the instrument as they affected Lindenwood Avenue were created with the understanding that Lindenwood Avenue and Clifton Avenue would be open, public highways in the City of St. Louis, pursuant to the dedication. The building restrictions affecting the lots fronting on Lindenwood Avenue were created and established only because Lindenwood Avenue was to be a public highway. This is evident from an examination of the plat. In all instances where building lines were established, the lots so restricted abutted a street. The building line in each instance was to be measured from the dedicated street line. Can it be said that when the street has been vacated and no longer exists and no longer offers the point from which the building line may be measured, that the original covenantors intended that the building line and other building restrictions should continue? We think not. The effect of the ordinance vacating said streets and alleys, as we shall demonstrate later, was to move the property lines of the lots facing said streets and alleys to the center line of the streets and alleys vacated. This had the effect of obliterating the line from which the 25' building line was originally measured. Also, the building restrictions no longer serve the purpose for which intended when the street no longer exists. In

other words, where there is no street can a building line and other building restrictions based thereon have any purpose to serve? The building restrictions were established because of the relationship and proximity of the lot to the street. In determining the intention of the covenantors the purpose of the restrictions must be considered and given effect. 26 C.J.S., Deeds, § 163, p. 1094. 'The intention of the parties is the paramount and controlling question. That intention is to be ascertained from the terms of the deed considered in the light of the circumstances surrounding the parties. Restrictions, being in derogation of the fee conveyed, will not be extended by implication to include anything not clearly expressed.' Gardner v. Maffitt, 335 Mo. 959, 74 S.W.2d 604, l.c. 607.

"We have pointed out that the law favors the free and untrammeled use of real property. The original covenantors when executing the instrument containing the building restrictions must have intended that said restrictions would have no binding effect on the lots if the streets abutting them were vacated. We think this becomes evident where all the land including the vacated streets is acquired by a single owner. For this same reason the building restrictions can have no beneficial value to plaintiffs' properties.

"Plaintiffs contend that the maintenance of the building line on Lindenwood Avenue will be valuable against violations of building lines on other streets within the subdivision. We fail to see how our ruling will affect the restrictions as they apply to lots other than those fronting on Lindenwood Avenue.

"Plaintiffs in opposition to the contention of defendants cite the case of Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S.W.2d 545. In that case the restrictive agreement limited the use of the properties to the building of private residences. Defendant sought to defeat the enforcement of the restrictive covenant by showing a change in the territory surrounding the covenanted area. There was no change within the area. The court ordered the defendant enjoined from erecting a church within the area on the ground it would constitute a violation of the restrictive covenant. We fail to see the relevancy of this citation. In the instant case there was a substantial change within the covenanted area and the trial court properly adjudged and decreed that the restrictions in question no longer served the purpose intended with respect to the lots owned by defendant ACF-Wrigley Stores, Inc., that abutted Lindenwood Avenue.

"Another point made by plaintiff is that restrictive covenants are equitable easements which may not be taken except under power of eminent domain. We think our discussion of the last point sufficiently disposes of this point. The ordinance vacating the streets and alleys did not attempt to take any easements plaintiffs had in the lots abutting the streets. It merely vacated the streets and alleys. In connection with the streets and alleys vacated, plaintiffs possessed no greater interest in them than any other property owner had in the general system of streets and alleys in the City of St. Louis.

"The last point asserted by plaintiffs in connection with the issue under review is that the trial court erred in failing to find, adjudge and decree that the recorded plat of Wenzlick Park Subdivision was incorporated in the deeds of the defendants, ACF-Wrigley Stores, Inc., and Tide Water Realty Co. It was unnecessary for the court to make this finding. These defendants stipulated that they acquired all their right, title and interest in and to the real estate owned by them in Wenzlick Park Subdivision subject to whatever effect the recorded plat may have had upon their property. It was admitted by these defendants that their title was subject to the recorded plat. It was not a controverted issue in the case.

"The final issue for discussion is whether plaintiffs have an easement over the vacated streets and alleys. Two points are advanc-

ed by plaintiffs wherein they contend that they have, (a) a private covenant for public use and (b) an easement by implication over all platted streets and alleys by reason of the plat being incorporated into all the deeds of plaintiffs and defendants. Many reasons are given by plaintiffs in support of these contentions. We will not attempt to discuss these reasons individually. To do so would only unduly lengthen what has become a long opinion. It is sufficient to state that we have examined all of them and do not agree with plaintiffs for the reasons which we shall state.

"It is conceded by all the parties that the recorded Wenzlick Park plat subdividing the tract of land into lots, streets and alleys constituted a statutory dedication to public use of all the streets and alleys described herein, among which were the streets and alleys described in Ordinance No. 48764. All of the requirements of Chapter 445 'Plats' RSMo.1949, 23 V.A. M.S., were met. Such a dedication of this character creates a public easement which vests in the City of St. Louis in trust for all the people of the city for the purposes to which said lots and alleys have been dedicated. Neil v. Independent Realty Company, 317 Mo. 1235, 298 S.W.2d 363 [70 A.L.R. 550]; Gorman v. Chicago, Burlington & Quincy Ry. Co., 255 Mo. 483, 164 S.W. 509; Bell v. Walkley, Mo.App., 27 S.W.2d 456.

"As held in Neil v. Independent Realty Co., supra, l.c. 368, such a plat does not convey the fee simple of the title but is a conveyance in trust for the uses named and for no other use or purpose (§ 445.070 RSMo.1949, 23 V.A.M.S.). The extent to which the easement becomes exclusively public and excludes and abolishes any possible private rights can be found in the language used by the Supreme Court in Bailey v. Culver, 84 Mo. 531, l.c. 539, as follows: 'And it is also well settled that when a dedication to public use occurs, this is wholly inconsistent with the continued and contemporaneous existence of a private

way independent of the public right. In such instances the private right is swallowed by and merged in the public one.'

"Plaintiffs contend that because the plat 'dedicated (the streets and alleys) to public use forever' it constitutes a written promise that the streets and alleys would remain dedicated to public use 'forever.' They say this constitutes a 'private covenant for a public use' which they are entitled to enforce. There is no such thing as a 'dedication' between an owner and individuals. The public is the only party to a dedication. The dedication must be of a use that serves the public at large. 16 Am. Jur., Dedication, § 15, p. 359.

"The language 'dedicated to public use forever' is usually used to effect statutory dedication. See Haertlein v. Rubin, Mo., 195 S.W.2d 480; Neil v. Independent Realty Co., supra; Stapenhorst v. City of St. Louis, 287 Mo. 285, 229 S.W. 754.

"As we have pointed out, it is conceded that a statutory dedication took place and, therefore, no private covenant by grant or implication inured to the benefit of plaintiffs. The fact that a reference to the plat was contained in the deeds of plaintiffs and defendants does not change the effect of the statutory dedication.

"The right of the City of St. Louis to vacate streets and alleys has not been questioned. Its right to do so needs no citation of authorities. It is a well recognized rule in the State of Missouri that when streets and alleys are vacated by the public authority the title and interest in the streets and alleys revert to adjoining property owners. Neil v. Independent Realty Co., supra; Bray v. St. Louis-San Francisco Ry. Co., Mo., 310 S.W.2d 822.

"The conveyance of the property owner's lot abutting upon a street or alley will carry the fee simple title in the street and alley subject to the public uses contained in the instrument of dedication. On vacation of the street or alley the title re-

verts to the abutting owners free of the public easement. Kansas City v. Jones Store Co., 325 Mo. 226, 28 S.W.2d 1008. We rule that plaintiffs have no easement or interest in the platted streets and alleys that were vacated."

The validity of the ordinance rezoning the area depends solely upon the sufficiency of the protest petition. If the required amount of area is covered by the signatures, the ordinance is invalid because it did not pass by a three-fourths vote of all of the Aldermen, as required by Section 89.060, V.A.M.S., 1949, above quoted. If the protest petition was insufficient, then the ordinance is valid for it passed by a majority vote, and no more than that was required in the absence of a valid protest petition.

■ A point is made as to the area covered by the statute. Two areas are mentioned. The first deals with the protest by the owners of ten percent of the area (excluding streets and alleys) included in the proposed change. The other protest provided for consists of ten percent of an area "determined by lines drawn parallel to and one hundred and eighty five feet distant from the boundaries of the district proposed to be changed". It is contended that the streets should be excluded in measuring the area outside of the area to be changed, but we do not so read the statute, as the two phrases are distinct from each other, and each clearly defines the area to be included. Measuring the area as set out by statute, the evidence showed that 522,150 square feet were included in the area outside of the area to be changed, and that ten percent of this is 52,215. Those signing the petition purportedly signed as owners of 71,657 square feet, which would be more than enough if the protest was otherwise regular.

Some objections were made to the acknowledgment to the protest petition, and while we find the acknowledgment adequate, we are not obliged to pass upon this, for we consider the protest petition inadequate in that the required signatures were not obtained.

■ We reach this conclusion because a number of the areas were signed for but by one owner of a tenancy by the entirety. Eliminating the areas so signed for, the required ten percent of the footage was not present. In only one case in Missouri has this question been before our court, and that was the Supreme Court en banc in the case of Findley-Kehl Inv. Co. v. O'Connor, 256 S.W. 798, 802. The Judge who wrote that opinion stated:

"This tract appears to be owned by A. M. Sills and Fannie Sills, his wife. It appears to be an estate by the entirety. The husband alone signed. This peculiar estate raises the question as to how much of this frontage should be counted. Appellants concede a count of one-half, and respondents insist upon all. The ownership of Sills, who signed, pertained and attached to the whole frontage or estate and not to a part. This is true, although the wife was living. She likewise was an owner of the whole. We think this whole frontage should have been counted."

The opinion of the writing judge in the above case was concurred in by two others, and one concurred only in the results. Three judges dissented. Since the results could be reached and the trial court affirmed without counting the estate by the entirety in the Findley case, we can only conclude that four of the seven judges disapproved of the law as stated by the writer of the opinion. The effect of the Findley opinion was to affirm the trial court and nothing else, and is therefore not authority on any legal point.

There are other cases in Missouri, such as Rhodes v. Koch, 195 Mo.App. 182, 189 S.W. 641, and Kitchen v. City of Clinton, 320 Mo. 569, 8 S.W.2d 602, which deal with different statutes wherein the sufficiency of the protest is not measured by the area represented, but by the number of the owners that signed. Although the Kitchen case, which was a divisional opinion of the Supreme Court, erroneously assumed that the

court en banc had adopted the opinion in the Findley case, the Kitchen case was not decided upon the point before us, but was on a per capita count of the owners.

That property held by the entirety can in such a way be affected by one of the owners, acting in his own behalf, is completely repugnant to the character of such estates. For this reason we hold that tracts held by the entirety, where only one owner signed, should not have been counted in arriving at the amount of footage represented by the objectors. Eliminating these tracts, the remonstrance filed was quite inadequate and the ordinance was valid upon its passage by a majority vote.

For the reasons stated the judgment of the trial court is affirmed.

ANDERSON, J., concurs.

RUDDY, Judge (dissenting).

The opinion that failed of acceptance by the other members of the court, referred to in the majority opinion, was written by me. My colleagues agreed with my opinion in all respects except on the question of the adequacy of the protest petition. I agree with the majority opinion in all respects, except that part which holds that the protest petition was inadequate.

The defendants in support of their contention that the protest petition is insufficient state that in most cases the signers of the protest petition were not the sole owners of the property for which they signed. The record shows that in a majority of the cases title to the property was held by husband and wife as tenants by the entirety and only one of the spouses signed the protest petition. In other cases the title to the property was held by joint tenants and only one of the joint tenants signed the protest petition. It is the contention of the defendants, upheld by the majority opinion, that all of the owners of a particular lot must sign before a lot can be included in the area sought to be covered by the protest

petition. They say both the husband and wife are "owners" and must sign a protest petition and in the case of a joint tenancy all the joint tenants must sign.

Defendants rely on the case of Blackwell v. City of Lee's Summit, 326 Mo. 491, 32 S.W.2d 63, loc. cit. 67, where the court said:

"But in Kitchen v. City of Clinton, 320 Mo. 569, 8 S.W.(2d) 602, after fully considering the O'Connor Case, this Division held that, where the protest is to be measured on a per capita basis, both the husband and wife must be counted as owners in determining the number of eligible signers. If that is so, and one of them fails to sign, then undoubtedly, indeed, mathematically, one must be counted for and one against the improvement."

Defendants in their brief state that the only logical conclusion which can be reached, from a study of the aforesaid decision and the decisions on which it is based, is that where a certain percentage of owners are required by the statute, both husband and wife must sign as "owners" when they own property as tenants by the entirety. To my mind, the significant thing about the cases of Blackwell v. City of Lee's Summit, supra, and Kitchen v. City of Clinton, 320 Mo. 569, 8 S.W.2d 602, is that they hold that both the husband and wife are *owners* in determining the number of eligible signers. However, in the aforesaid cases the Missouri statute involved required (1) a majority of the number of resident owners and (2) a majority of the front feet of property owned by such resident owners and abutting upon a part of the street to be improved. Where, in addition to a majority of the front feet of property owned by the resident owners a majority of the number of resident owners must also be obtained, the rule in Missouri is that if one co-tenant signs the protest petition and the other does not sign, in order to determine the statutory majority each co-tenant must be treated as an *owner* and the one signing must be counted as the one opposing the

improvement and the one not signing must be counted on the side favoring the improvement.

In the instant case we are not dealing with a statute where the protest is to be computed on a per capita basis. We are dealing with a statute that requires the signers to be the owners of ten per cent or more of an area "determined by lines drawn parallel to and one hundred and eighty-five feet distant from the boundaries of the district proposed to be changed * * *." § 89.060 RSMo 1949, 7 V.A.M.S. All that is required under this statute is that the protest petition be signed by owners of ten per cent or more of the areas of the land in question and this statute does not require a majority in number of the resident owners of the area in question.

As pointed out in the majority opinion, the identical question facing us in this case confronted the Supreme Court in the case of Findley-Kehl Investment Co. v. O'Connor, Mo., 256 S.W. 798, loc. cit. 799. In that case the writer of the opinion construed the provision of the Charter of Kansas City, Missouri, which provided that in the case of improvement of a street, avenue, alley, or a part thereof, where "the resident owners of the city owning a majority of the front feet of all the lands belonging to such residents and fronting on the street * * * shall file with the said board * * a remonstrance against such * * *" improvement, "the power of the board to make the improvement shall cease. * * *."

In the Findley-Kehl Investment Co. case the writer of the opinion held that the signature of the husband alone was sufficient to count the whole frontage in determining the sufficiency of the protest petition. The majority opinion in the instant case holds that because the opinion in the Findley-Kehl Investment Co. case failed to receive the concurrence, in all respects, of a majority of the membership of the Supreme Court En Banc that the statements of law made therein are not authority on any legal point. I do not intend to differ with this

statement. I do differ with the majority opinion in its statement that the opinion of the Supreme Court in the case of Kitchen v. City of Clinton, supra, is not controlling in the instant case. It is true that in the Kitchen case the primary question before the court was whether a majority in number of the resident owners of land abutting upon that part of the street proposed to be improved had signed the remonstrance petition. However, in that case the court was concerned with who was an "owner" of property. It was contended by appellants in the Kitchen case that the pronouncements made in the Findley-Kehl Investment Co. case were at variance with the ruling of the Springfield Court of Appeals in the case of Rhodes et al. v. Koch et al., 195 Mo. App. 182, 189 S.W. 641, whereas the respondents contended that the ruling in the Findley-Kehl Investment Co. case was in full accord with the ruling of the Springfield Court of Appeals in the Rhodes case. Because of these conflicting contentions the Supreme Court undertook to review the opinion written in the Findley-Kehl Investment Co. case and in its review of that opinion found that the case was not inconsistent or at variance with the ruling of the Springfield Court of Appeals in the Rhodes case, supra, and in so finding said: "We think that both of the cited decisions were rightly ruled upon correct and sound principles of law * * *." 8 S.W.2d loc. cit. 606.

While, factually the court was concerned with the sufficiency of the "per capita count of the owners," the legal question was whether a husband and wife holding an estate by the entirety is each an *owner* of property. 8 S.W.2d loc. cit. 604. The Supreme Court in quoting from the Findley-Kehl Investment Co. case pointed to the language in the opinion wherein it was said that each was an *owner* of the whole and if only one spouse signed the remonstrance the whole frontage of the tract must be counted in determining the sufficiency of the remonstrance since the signer was an *owner* of the entire frontage and estate. In other words, whether the measure of effectiveness

of the remonstrance was a "per capita count of owners" or the "owners of an area or frontage of land," the legal question decided in the Kitchen case, supra, which determined the validity or invalidity of the remonstrance, depended upon and was one of *ownership*. The Supreme Court in the Kitchen case clearly and unequivocally ruled that the principles of law as announced in the Findley-Kehl Investment Co. case were correct and sound. It is my opinion that in so holding the Supreme Court has established as the law of this state that each spouse is an *owner* of the whole and where the area of land in the lots are signed for by one of the spouses alone, the whole of such area should be counted in determining the sufficiency of the protest or remonstrance petition.

My brother judges hold that it "is completely repugnant to the character" of property held by the entirety to permit the signature of one to affect the property. This statement is correct if it is applied to a situation where one of the owners attempts to burden the property with the cost of an improvement which will result in a tax lien against the property or in any similar situation where the nature of the petition signed imposes a burden on the property. As said in the case of Los Angeles Lighting Co. v. City of Los Angeles, 106 Cal. 156, 39 P. 535:

> "It is undoubtedly true that it is not within the power of a cotenant to create an incumbrance upon the entire estate, or to impose any burden upon the interests of his cotenants therein, nor can he by any act of his confer jurisdiction upon any other body or tribunal to impose such burden, as was held in Mulligan v. Smith, 59 Cal. 206."

However, the court, in holding the entire frontage of the lot should be counted when only one tenant signed the protest petition, distinguished between a situation where one cotenant attempted to impose a burden on the interests of the other cotenant and one where the cotenant through his act or signature was protecting the entire estate from injury or loss. In this connection it was further said in the Los Angeles Lighting Co. case, at loc. cit. 535, that:

> "This rule of inability is, however, entirely inapplicable to the acts of the cotenant in a case like the present. One cotenant can at any time protect the entire estate from injury or loss without calling to his aid the assistance of the other cotenants, and his act will inure to their benefit. He can resist an intruder, or evict a trespasser, remove an incumbrance, or redeem from a burden, and, since his acts in this behalf are in the interest of and for the benefit of his cotenants, their authority therefore, if necessary, will be presumed. We hold, therefore, that a cotenant is authorized to sign a protest against the improvement of a street by the city council under the aforesaid act."

To the same effect see Mosher v. City of Phoenix, 33 Ariz. 182, 263 P. 5.

In the case of Chan v. City of South Omaha, 85 Neb. 434, 123 N.W. 464, loc. cit. 466, the court said:

> "While it may be necessary for the representatives to act jointly to convey the real estate, a remonstrance signed by either representative for the purpose of protecting the estate is valid.
>
> " * * * It may be that, if the heir, devisee, or other person entitled to the fee of the lots had denied the right of the remonstrant to represent the estate, the city council would have been justified in rejecting the signatures. The record affirmatively discloses that the authority of the remonstrants was not questioned by any other owner of the property represented by the signers."

The Chan case, supra, was followed by the court in Bonner v. City of Imperial, 149 Neb. 721, 32 N.W.2d 267, 3 A.L.R.2d 120. In the Bonner case the court held that a presumption arises that the tenant ob-

jecting did so as the representative of the joint tenancy, which presumption shall prevail and obtain until and unless the contrary is made to appear.

In our case defendants introduced no evidence to show that the spouse not signing the protest petition was in favor of the rezoning ordinance and was opposed to the stand taken by the opposite spouse. I am certain that if the spouse who did not sign was given an opportunity to testify he or she would approve of the signing of the protest petition by the other spouse. This is in harmony with the presumed close and harmonious relationship that exists between man and wife.

In the Annotation to the case of Bonner v. City of Imperial, supra, appearing in 3 A.L.R.2d p. 129, it is pointed out that the presumption followed in the Bonner case represents the conclusion reached in the majority of the cases. While the Kitchen case, supra, does not rest on such a presumption, I think it is an additional reason that can be given to support the holding that the entire area of the lot should be counted under the protest petition when signed by one of the owners. This should be true where the nature of the protest is to protect the property from an act of the Board of Aldermen which may prove injurious to owners of the property adjacent to the area proposed to be rezoned. I do not think it can be denied that the residential property owned by the protestants and immediately adjacent to the area proposed to be used for commercial development will suffer injury to value if the commercial development is consummated. In addition, the commercial development will seriously interfere with the peace, quiet and privacy of the residential owners.

It is my opinion that in the instant case one of the spouses is authorized to sign the protest petition, and, when so signed, the whole of the area of the lot signed for should be counted in determining the sufficiency of the protest petition.

In the cases of lots owned by joint tenants, I think the rule applicable to tenancies by the entirety is applicable in the case of a joint tenancy. All hold the property by one joint title and in one right, each being seized of a whole with the right of survivor to take the whole. 48 C.J.S. Joint Tenancy § 1, p. 910. The essential elements of a joint tenancy are four: unity of interest, unity of title, unity of time, and unity of possession. Each of the owners must have one and the same interest, conveyed by the same act or instrument, to vest at one and the same time and each must have the entire possession of the property held in joint tenancy. Feltz v. Pavlick, Mo.App., 257 S.W.2d 214, and 48 C.J.S. Joint Tenancy § 3c., p. 916. I see no reason why the rule as stated in the Kitchen case and the reasoning advanced by the other cases cited should not be applied to a joint tenancy. I think that the areas of land signed for by one of the joint tenants should be counted.

The majority opinion finds the acknowledgment to the protest petition adequate and I concur in this finding. Defendants advance many complaints in their opposition to the sufficiency of the acknowledgment which I shall discuss.

I admit the form of the acknowledgment is no model to be followed by others. However, a substantial compliance with the requirements of the statute covering acknowledgments is all that is required. Alexander v. Merry, 9 Mo. 514; Hughes v. McDivitt, 102 Mo. 77, 14 S.W. 660, 15 S.W. 756; Hughes v. Morris, 110 Mo. 306, 19 S.W. 481; Mathews v. O'Donnell, 289 Mo. 235, 233 S.W. 451; Hatcher v. Hall, Mo.App., 292 S.W.2d 619.

It is the policy of the law to construe acknowledgments liberally, and, where a substantial compliance appears clearly and affirmatively, the certificate will be held sufficient, no matter what language is employed. Mathews v. O'Donnell, supra.

This policy is founded on the knowledge that the convenience of people requires that the taking of acknowledgments on instruments many times is entrusted to those who are ignorant of the forms of the law, who

will take a proper acknowledgment, and blunder in certifying it. Alexander v. Merry, supra; Wilson v. Quigley, 107 Mo. 98, 17 S.W. 891; Mathews v. O'Donnell, supra.

The first complaint asserted by defendants in their contention that the acknowledgment is insufficient is that the Notary's seal does not appear on the protest petition. A photostatic copy of the original petition filed with the Board of Aldermen was introduced and admitted in evidence. There is no contention on the part of defendants that the copy is not a true reproduction of the original, except for the missing seal. The photostatic copy admitted in evidence does not show a Notary seal affixed to the acknowledgment on the protest petition. I think a sufficient answer to the complaint of defendants is found in the testimony of Joseph F. Becker, the Notary, who unequivocally stated that he placed a seal on the original instrument and that the impression of the seal failed to show on the photostatic copy. I think his testimony, uncontroverted by defendants, is sufficient to establish that the original protest petition contained the Notary seal.

The acknowledgment declared by defendants to be insufficient is as follows:

"City of St. Louis) ⎤
"State of Missouri) ⎦

"The individuals whose signatures have been affixed to this instrument, consisting of four (4) pages, did with full knowledge of the contents hereinbefore set forth, and of their own free will, sign their names before me, Joseph F. Becker, a Notary Public of the City of St. Louis, Missouri.
"Acknowledged before me in the city of St. Louis and the State of Missouri, this 26th day of November, 1956.
                              "Joseph F. Becker
                              "Notary Public
"My commission expires March 29, 1957."

In their next complaint concerning the sufficiency of the acknowledgment defendants assert that the acknowledgment did not state that the signers were known to the Notary. They say that the law requires a Notary to either certify that he knows the party or adopt the statutory mode of identification, citing Riehl v. Noel & Tittsworth, 89 Mo.App. 178; Hatcher v. Hall, supra; 1 Gill, Treatise on Real Property Law in Missouri, p. 68. I have examined the cases cited by defendants and many others. No tangible benefit would result from an attempt to analyze and reconcile the holdings in the numerous cases construing the sufficiency of acknowledgments. The result in each case, of course, depends upon the language contained in the acknowledgment under review.

I think the case of Warder v. Henry, 117 Mo. 530, loc. cit. 539, 23 S.W. 776, loc. cit. 778, controls our decision on the complaint raised by defendants. One of the questions in that case was whether a deed of trust given to secure an indebtedness of $85,000 "was well acknowledged." The acknowledgment omitted the words "to me personally known" and contained no words to show that affiant was known to the Notary. The certificate did state "before me personally appeared George W. Warder." In holding the acknowledgment sufficient, the court said:

"The officer in making this statement that George W. Warder personally appeared before him, includes therein the proposition that Warder was to him personally known; for, unless personally known, how could he say Warder *personally appeared*? The meaning and sense of the certificate of acknowledgment is the same as the statute. The transposition of words does not affect the validity of the certificate. There is certainly here a substantial compliance with the statute, and that is all the law demands, as has been time and again held by this court."

In the case of Hatcher v. Hall, supra, cited and relied on by defendants, the court in a footnote (292 S.W.2d loc. cit. 622)

said: "Thus, a certificate showing that the acknowledger 'personally appeared' constitutes substantial compliance with the statutory provision [Section 442.210] that the certificate 'shall state' that the acknowledger was 'personally known.' "

While the certificate under review does not say that the individuals "personally appeared" before the Notary, it does say that they signed their names "before me, Joseph F. Becker, a Notary Public * * *." Obviously, in order to sign before the Notary they had to "personally appear" before him. Becker, in his testimony, said that at the time of taking the acknowledgments he "knew them, slight as it might be." I hold that the ruling in Warder v. Henry, supra, controls and that there is no validity to the complaint lodged by defendants.

The final complaint of defendants directed at the sufficiency of the acknowledgment is that it did not certify that the signers were the persons named therein and that they executed the same. I think the acknowledgment is sufficient in this respect. It stated that "The individuals whose signatures have been affixed to this instrument * * * * did * * * sign their names before me, Joseph F. Becker, a Notary Public, * * *." Those words are sufficient to show that the persons who signed are the persons named therein.

In State to the Use of Alexander v. Plass, 58 Mo.App. 148, loc. cit. 151, the court said: "that plaintiff had a right to assume that the Notary's certificate was true and that the *veritable persons therein mentioned* appeared before him and acknowledged the instruments as therein recited." (Emphasis supplied.) The acknowledgment is prima facie evidence of the facts recited therein. O'Bannon v. McArron, Mo., 236 S.W. 48.

No evidence was adduced by defendants to show that the individuals who signed the protest petition and acknowledged it were not the "veritable persons" they claimed to be, namely, the owners of the property described opposite their names.

The acknowledgment substantially complies with the requirements of the statute in all respects. I find the protest petition complies with § 89.060, supra. Thus, if the ordinance failed to receive the favorable vote of three-fourths of all the members of the Board of Aldermen, it is ineffective and invalid. The record herein fails to show how many members constitute the Board of Aldermen of the City of St. Louis. However, we are authorized to take judicial notice of the provisions of the Charter of the City of St. Louis, Constitution of Missouri, 1945, Article VI, § 19, 2 V.A.M.S. Article I, § 3 of the Charter of the City of St. Louis divides the city into twenty-eight wards. Article II, § 3, provides for the election of one Alderman from each ward and a President of the Board of Aldermen. The Stipulation of Facts shows that Ordinance No. 48159 (the rezoning ordinance) upon a vote by the Board of Aldermen received fifteen ayes and, therefore, failed to receive the favorable vote of three-fourths of all the members of the Board of Aldermen. Because of this failure said Ordinance is invalid and has no legal effect.

Upon a careful examination of the entire record and the legal questions presented, I would reverse that part of the trial court's judgment and decree wherein the court adjudged and decreed that Ordinance No. 48159 is a valid, lawful and subsisting ordinance of the City of St. Louis, and in all other respects I would affirm said judgment and decree.